MAGNOLIA PETROLEUM CO. v. HAVO-
LINE AUTO SUPPLY CO.

(No. 7207.)

(Court of Civil Appeals of Texas. Dallas.
Dec. 12, 1914. Rehearing Denied
Jan. 23, 1915.)

SALES (§ 220*)—CONTRACT TO SELL—ASSIGN-
ABILITY.

A contract to sell to a certain retailer such
gasoline as he shall need for his business, with-
in certain limits, for a year, on 30 days' credit
from date of invoices, involves personal credit,
trust, and confidence, and so is not assignable
by the buyer without the consent of the seller.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. § 606; Dec. Dig. § 220.*]

Appeal from District Court, Dallas County;
Kenneth Foree, Judge.

Action by the Havoline Auto Supply Com-
pany against the Magnolia Petroleum Com-
pany. Judgment for plaintiff, and defend-
ant appeals. Reversed and remanded.

Geo. C. Greer and S. W. Marshall, both of
Dallas, for appellant. El. J. Gibson and Cal-
laway & Mathis, all of Dallas, for appellee.

TALBOT, J. The appellant, Magnolia
Petroleum Company, a wholesale dealer in
gasoline, on the 20th day of February, 1912,
acting through its agent, E. L. Kalbfleisch,
entered into a written contract with Wayne
A. Hearne, a retail dealer in such commodity,
for the sale by the former to the latter of
motor gasoline at nine cents per gallon. The
contract, so far as is material to state, is
as follows:

"This contract made and entered into on this
the 20th day of February, 1912, by Wayne A.
Hearne, of Dallas, Texas, party of the first
part, and Magnolia Petroleum Company, Dal-
las, Texas, party of the second part, whereby
the party of the first part agrees to buy from
the party of the second part such petroleum lu-
bricating oils and greases, and also, such other
products as are named in the list below, as the
party of the first part may need for use in its
plant for one year from February 20, 1912, at
the following prices for the goods named:

| Min. | Max. | Grade of Oil. | Pr. Gal. | Min. | Max. | Grade of Oil. | Per Gal. |
|------|------|---------------|----------|------|------|---------------|----------|
| 30 | 100 | Motor gasoline | 64 | | | | 9c |

"Above prices are in barrels f. o. b. Dallas,
Texas, Terms: Cash 30 days from date of in-
voice.

"If during the life of this agreement the
financial responsibility of the party of the first
part becomes impaired, or unsatisfactory to the
party of the second part, cash payments or
satisfactory security may be demanded by the
party of the second part."

On the 14th day of August, 1912, the
Adolphus Auto Supply Company, a partner-
ship, composed of J. W. Crotty, Edwin Hob-
by, and F. E. White, purchased and took over
the business of the said Hearne, and at the
same time and in connection therewith pur-
chased the contract referred to above, said
contract being assigned by the said Hearne
to the Adolphus Auto Supply Company by
an instrument in writing on the back there-
of in the following language:

"Dallas, Texas, August 14, 1914.
"For valuable consideration, receipt of which
is hereby fully acknowledged, I hereby transfer
and assign the within contract to the Adolphus
Auto Supply Company, Dallas, Texas.
"Wayne A. Hearne."

In the month of September, 1912, the
Adolphus Auto Supply Company was con-
verted into a corporation under the corpo-
rate name of Havoline Auto Supply Compa-
ny; the stockholders thereof being the same
persons who had composed the former part-
nership. The business conducted by the part-
nership firm of Adolphus Auto Supply Com-
pany and by the Havoline Auto Supply Com-
pany, corporation, was of the character as
that conducted by the said Wayne A. Hearne
and was carried on at the place where
Hearne carried on his business. The appel-
lant delivered gasoline under the contract in
question to Hearne until he sold out to the
Adolphus Auto Supply Company, then to
that company until its incorporation under
the name of Havoline Auto Supply Compa-
ny, and then to this corporation until the
31st day of December, 1912, when it refused
to deliver any more gasoline under said con-
tract. The total amount of gasoline deliv-
ered under said contract up to and includ-
ing December 31, 1912, was 43,000 gallons,
and at this date gasoline had advanced in
price to about 20 cents per gallon wholesale.
Appellant refusing to deliver to appellee any
more gasoline under the contract mentioned,
appellee instituted this suit against appellant
charging a breach of said contract, and pray-
ing for damages in the sum of $17,000. The
appellant pleaded a general demurrer, gen-
eral denial, and specially: That it had never
in any manner consented to the transfer or
assignment of the contract in question, by the
said Wayne A. Hearne to the Adolphus Auto Supply Com-
pany, or the appellee or any one else, and
that without such consent said contract was
not assignable and appellant was not obligat-
ed and bound to deliver gasoline thereunder
to either the Adolphus Auto Supply Company
or the appellee. That on August 14, 1912,
being advised that Wayne A. Hearne had
sold out the business to the Adolphus Auto
Supply Company, including the contract be-
tween the Magnolia Petroleum Company and
Hearne, the Magnolia Petroleum Company
declined to recognize the transfer of said con-
tract as binding upon it to deliver thereunder
to the Adolphus Auto Supply Company, and
that when it did so decline the agents and
representatives of the Adolphus Auto Supply
Company represented to the Magnolia Petro-
leum Company that the Adolphus Auto Sup-
ply Company was but a continuation of the

business of Wayne A. Hearne, and that Wayne A. Hearne still owned a large and substantial interest in said business, and that it was relying upon this representation that the Magnolia Petroleum Company continued to make deliveries, and that it did not learn until the latter part of December, 1912, that Wayne A. Hearne had no interest in the business and that the business was not a continuation of the Wayne A. Hearne business, but was owned entirely by others, and that, as soon as it learned thereof, it notified the plaintiff that it was no longer bound to deliver gasoline under the contract, and would not do so. The appellee by supplemental petition specially excepted to this plea on the ground that the contract entered into between the appellant and Wayne A. Hearne was assignable at law, and hence whether the same was owned by Hearne or his assignee was immaterial, as appellant was bound to comply with the terms and conditions thereof in any event. This exception was sustained and the plea stricken out. The appellant further pleaded by way of cross-action, that for such gasoline as it did deliver to plaintiff between August 14, 1912, and December 31, 1912, under the representations to the defendant by plaintiff that it was but a continuation of Wayne A. Hearne's business, thereby inducing it to recognize and deliver under the contract, it was entitled to recover from plaintiff the difference between the contract price of nine cents per gallon under which it had made such deliveries, and the market value of the gasoline between those times, as it had suffered that loss through the misrepresentations of the plaintiff in inducing it to deliver under the contract, to the plaintiff. To this cross-action appellee filed an exception asserting, in effect, that the contract, upon which its suit was founded, was assignable at law without the consent of appellant, and hence the allegations of the cross-action showed no cause of action against appellee. This exception was also sustained, and the appellant denied the right to introduce any evidence in support of said cross-action.

The case was tried without a jury, and the court held, as shown by his conclusions filed, that the contract entered into by the appellant and Wayne A. Hearne was assignable at law and bound the appellant to perform it in the hands of appellee; that, at the time appellant refused to furnish any more gasoline under the contract, there remained of the maximum amount provided for thereby 57,000 gallons of gasoline; and that if appellant had complied with said contract and supplied appellee with that amount of gasoline between the 1st day of January, 1913, and the 20th day of February, 1913, the date of the expiration of said contract, it could have disposed of the same to its retail trade at a net profit of 8 cents per gallon. The total net profit under this finding of the court be-

ing $4,560, judgment was rendered in favor of the appellee therefor.

Appellant complains, in its first and second assignments of error, of the trial court's action in sustaining appellee's exceptions to the special defense pleaded by it, which is substantially set out above in our statement of the case. The propositions contended for under these assignments are practically the same, and are to the effect that:

"Where a contract for the sale of gasoline provides for the sale of such quantity of same as the buyer may need for use in his plant for one year, the buyer being a retail dealer therein, the transfer by assignment of the contract by the buyer does not obligate the seller to continue the contract with the transferee, and upon the transferee being informed by the seller that it will not continue to fill the contract, and thereupon the transferee represents to the seller that the original buyer still owns a controlling interest in the business, and that the business is but a continuation of the original buyer's business, and the seller relying upon such representations and induced thereto thereby continues to fill such contract and afterwards learns that such representations are untrue, such seller has the legal right then to refuse further to deliver under such contract, and a plea setting up the same is a good plea in defense of suit for failure further to deliver under such contract, and it is error for the trial court to sustain plaintiff's special exception thereto."

Article 583 of the Revised Statutes of 1911 is as follows:

"The obligee, or assignee, of any written instrument not negotiable by the law merchant may transfer to another, by assignment, all the interest he may have in the same."

Many kinds of contracts have been held to be assignable under this and similar statutes, and also in equity; but in no case, so far as we are aware, has it been held that rights under a contract involving personal credit, trust, and confidence may be assigned by one of the parties thereto without the consent of the other. On the contrary, it has been quite uniformly held that in such cases the contract is not assignable. In Pollock on Contracts (4th Ed.) p. 425, it is said:

"Rights arising out of contract cannot be transferred if they involve a relation of personal confidence, such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided."

The principle here announced has been recognized and sustained by decisions of our own courts and by decisions rendered in other jurisdictions. Menger v. Ward, 87 Tex. 622, 30 S. W. 853; Land Co. v. Traction Co., 95 Tex. 252, 66 S. W. 766; Smith v. Pitts, 57 Tex. Civ. App. 97, 122 S. W. 46; Lansden v. McCarthy, 45 Mo. 106; La Rue v. Groezinger, 84 Cal. 281, 24 Pac. 42, 18 Am. St. Rep. 179; Arkansas Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246. In Lansden v. McCarthy, supra, it was held that a contract by a butcher to deliver meat to a hotel for one year, to be paid for at the end of each month, could not be assigned by the hotel keeper so as to bind the butcher to carry out the contract with the purchaser thereof. It was so held on the

ground that the butcher's estimate of the solvency and pecuniary credit and standing of the purchaser's assignor might have constituted an important condition of the contract, without which he would never have entered into it. This case is cited by the Supreme Court of this state in Menger v. Ward, supra, and the following remarks of the judge writing the opinion quoted with approval:

'The contract imposed no obligation upon the defendant to accept as his debtors any other parties than those with whom he contracted. Nor was he under any obligation to experiment for a month, and determine at the end of it whether he would go on with his contract according as he should or should not succeed in securing prompt payment. He was willing to give Bedard & Knickerbocker credit; but it does not thence follow that he was willing to give credit to the plaintiffs, even for a month or any part of it. Whether or not he would do so was a question for him alone to determine. He could not be forced into it against his will by an assignment of the contract without his consent."

The case of Arkansas Smelting Co. v. Belden Mining Co., cited above, involved a contract in writing, by which a mining company agreed to sell and deliver lead ore from time to time at the smelting works of Billings & Edens, a partnership, to become their property upon delivery, and to be paid for after subsequent assay of the ore and ascertainment of the price. The contract and the smelting works were sold to the plaintiff in the suit, a corporation, and the defendant, the mining company, ceased to deliver ore under the contract and refused to perform it. The court held that the defendant, the mining company, could not be compelled to accept the liability of another person or corporation as a substitute for the liability of those with whom it had contracted. In delivering the opinion of the court, Mr. Justice Gray, among other things, said:

"At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' Humble v. Hunter, 12 Q. B. 310, 317; Winchester v. Howard, 97 Mass. 303, 305 [93 Am. Dec. 93]; Boston Ice Co. v. Potter, 123 Mass. 28 [25 Am. Rep. 9]; King v. Batterson, 13 R. I. 117, 120 [43 Am. Rep. 13]; Lansden v. McCarthy, 45 Mo. 106."

As has been seen, the contract in question in the case at bar obligated the appellant to sell Wayne A. Hearne for the period of one year, as the said Hearne should need for use in his plant, gasoline at nine cents per gallon, limited to not less than 30,000 gallons and not more than 100,000 gallons, and further provided for 30 days' credit from date of in-

voices. It is manifest by the contract itself, or clearly appears, that it was entered into on the part of the appellant upon credit extended to Wayne A. Hearne and by reason of the trust and confidence placed in him personally. This being true, the contract, so long as it remained executory, could not be assigned by Hearne without the consent of appellant. Because appellant was willing to give credit to Hearne, it does not follow that he was willing to give credit to appellee. It could not be forced to do so against its will by a mere assignment of the contract. As said in Menger v. Ward, above referred to:

"There is more involved in the relation of debtor and creditor * * * than simply the financial ability of the debtor and the value of the security given; the character of the man is oftentimes worth more than his property as an assurance of prompt payment."

The case was tried by the appellee in the court below on the theory that the contract sued on was assignable without the consent of appellant, and hence the exceptions urged to appellant's special defenses were sustained as being wholly immaterial. This, we think, was an erroneous view of the law arising upon the facts, and for the error in sustaining the exceptions and striking out said defenses the judgment must be reversed. That an assignment of a contract, such as the one involved in this suit, when made by one of the parties thereto, without the consent of the other, may be ratified, or the party to whom such assignment is made may, by consent, be substituted for the assignor, cannot well be questioned, but no such issue was presented and determined. Whatever issue the answer of the appellant may have presented in this regard was eliminated by the court's ruling in sustaining appellee's exceptions.

Appellee suggests that appellant nowhere contends "that there were any rights growing out of the contract involving trust, confidence, skill, or any similar element of consideration"; but we find that, in stating the nature and result of the suit, appellant states that the contract in question provided for 30 days' credit from date of invoice, and its first assignment of error, wherein it is asserted, in effect, that the transfer by assignment of said contract by Wayne A. Hearne did not obligate appellant to continue the same with appellee, requires that the assignment, be sustained if the contract involved personal credit, trust, and confidence whether that specific reason for so doing is urged or not. That the contract provided for sales of gasoline on credit of 30 days is clear, and hence it follows that rights of appellant growing out of it necessarily involved personal credit, trust, and confidence.

The third assignment of error complains of the court's action in sustaining appellee's demurrer to appellant's cross-action. What we have said in disposing of appellant's first and second assignments of error is applicable here. The contract upon which appellee's

suit is founded could not be assigned by Hearne without appellant's consent, and the allegations of the cross-action to the effect that such assignment was without appellant's consent, and that the deliveries of gasoline to the Adolphus Auto Supply Company and to the appellee under the contract had been made by reason of the fraudulent misrepresentations of appellee to appellant, which were fully set out, and that but for such representations appellant would not have made such deliveries, and that appellant had thereby suffered damages, set up a cause of action which could be prosecuted in this suit. It was error therefore to sustain the demurrer and strike out the cross-action.

The next contention is that the judgment is excessive, because rendered upon a mistaken idea of the measure of appellee's damages. Upon this question it is sufficient to say that if we are correct in our conclusion that the contract sued on was not assignable without the consent of appellant, and it did not agree to the substitution of appellee for Hearne, nor with full knowledge of the transfer of said contract ratify the same, then appellee had no cause of action and could not recover anything. But if appellant agreed to such substitution of appellee, or with full knowledge of the transfer and assignment of the contract to appellee ratified such transfer, then and in that event we think the measure of damages applied by the learned trial judge was correct.

For the reason stated, the judgment is reversed, and the cause remanded.