## AMSCO PIPE LINE CO. et al. v. DONICO PRODUCTION CO. et al.

No. 10354.

Court of Civil Appeals of Texas. San Antonio.

Jan. 5, 1938.

Rehearing Denied Jan. 26, 1938.

John S. McCampbell, Johns, McCampbell & Snyder, and Ronald Smallwood, all of Corpus Christi, and Virgil Childress and Lawler, Wood & Childress, all of Houston, for appellants.

C. O. Hamlin, of Corpus Christi, and Vinson, Elkins, Weems & Francis, George E. B. Peddy and E. S. Morris, all of Houston, for appellees.

SLATTON, Justice.

Amsco Pipe Line Company, Amsco Oil Purchasing Company, and Potter Pipe Line Company, Inc., filed this suit against Donico Production Company and Crown Central Petroleum Corporation. It was alleged that on the 3d day of May, 1937, Potter Pipe Line Company, Inc., entered into a written contract with Donico Production Company, under which Donico agreed to sell and deliver to the pipe line company, and the pipe line company agreed to purchase and receive, all oil which might be produced for a period of one year from a described leasehold estate situated in Nueces county. Under the terms of the agreement, Potter agreed to pay to the owners of the oil the posted market price, under the terms and provisions of the standard form of division order of the Potter Pipe Line Company, Inc. The appellants alleged that the Potter Pipe Line Company, Inc., was operating a pipe line owned by it and was in the business of transporting oil produced in the Clarkwood area of the Saxet oil field; that subsequent to the execution and delivery of the contract the pipe line company built connections from its pipe line to the production company's lease at an expense of approxi-

mately $2,000. It was alleged that on August 1, 1937, the Potter Company sold to Amsco Pipe Line Company its entire pipe line system, including the branch line connecting with Donico's lease, and at the same time Potter assigned to Amsco Pipe Line Company all of the rights accruing to it under the terms of said contract with Donico, and delegated to the pipe line company the performance of all the duties imposed upon Potter by the terms of said contract; that, after such assignment, the Donico Company delivered its oil to the Amsco Pipe Line from August 1 to about November 17, 1937, at which time it refused to deliver any oil to it and thereafter delivered its oil to the Crown Company.

Allegations were made that the described leasehold estate was producing about 500 barrels of oil per day, and the action of the Donico and Crown Companies in the disconnection of its pipe line was a trespass to its interest in the leasehold estate. Allegations were made upon information and belief that the breach of the contract was occasioned and motivated by the Crown Company paying and offering to pay more for the oil produced than was being paid under the contract.

The appellants further alleged that all of the oil in that area of the particular kind and quality being produced upon the described leasehold had been contracted for and was not obtainable in the open market, that the production of the wells was uncertain, that their damages were speculative, therefore their remedy at law was inadequate. They prayed for a temporary restraining order, for a temporary injunction, and for a permanent injunction compelling the Donico Company to specifically perform the contract.

After notice, the appellees answered and urged a general demurrer to the pleadings of the appellants, which was sustained by the trial court. The appellants refused to amend, and the trial court ordered the case dismissed. Hence this appeal.

We have only stated enough of the pleadings to present the issues to be decided upon this appeal.

The contract exhibited to the pleading was as follows:

"The State of Texas,
"County of Nueces.
"Whereas, Donico Production Company a corporation. is the owner and operator of the oil leasehold estates in and covering the following described tract of land in Nueces County, Texas: [Description by metes and bounds.]

"Whereas, Potter Pipe Line Company, Inc., a corporation, desires to purchase all oil which may be produced from said land for a period of one year from date hereof:

"This contract, Witnesseth:

"Donico Production Company, a corporation, agrees to sell and deliver unto Potter Pipe Line Company, Inc., and Potter Pipe Line Company, Inc., agrees to purchase and receive from Donico Production Company, a corporation, all oil which may be produced from the above described lands for a period of one year from date hereof, and Potter Pipe Line Company, Inc., agrees to pay to the owners of said oil the posted market price on the date of the receipt thereof, and the terms of the standard form division order of Potter Pipe Line Company, Inc., are hereby made and shall be considered as a part of this contract.

"Witness our hands, this 3rd day of May, 1937."

The division order, among other things, provided:

"(1) The oil purchased and received by the Potter Pipe Line Company, Inc., under the provisions of this division order, shall become the property of the Potter Pipe Line Company, Inc., as soon as the same shall be taken into its custody or delivered on its order to a connecting carrier.

"(2) Oil which is purchased by you hereunder at the time when it is delivered to such Pipe Line Company and/or other carrier authorized by you, shall be paid for to the owners, their successors or assigns, in proportion to their respective interests shown above, at the price posted by you for oil of the same gravity, kind and quantity in the particular field on the day when such oil is received by such Pipe Line Company and/or other carrier authorized by you, payment to be made by check or draft mailed or delivered on or before the twelfth day of each calendar month for the oil run during the preceding month. Provided, however, that you may, at your option, hold without interest and remit semi-annually for the aggregate of six months' accumulations of monthly accruals of amounts less than $2.00, payment to be made on or before February 12th and August 12th of each year in the manner above provided."

The appellants assert that the contract between Donico and Potter, not involving the personal trust and confidence between the contracting parties, that its assignment by Potter to Amsco was authorized, and therefore the trial court erred in sustaining the general demurrer urged by the appellees.

Article 569 of the Revised Civil Statutes of 1925 provides: "The obligee or assignee of any written instrument not negotiable by the law merchant may by assignment transfer all his interest therein to another."

And article 570 provides in part: "The assignee of any instrument mentioned in the preceding article may sue thereon in his own name."

■ It appears that, in consequence of the statutes, the courts of this state have uniformly held that the general rule is that all contracts are assignable. All of the authorities in the declaration of the general rule also recognize well-established exceptions to it. So we would say that the exceptions are as general as the rule itself. Some of the well-noted exceptions are grounded upon the right of one making a contract to select the party with whom he deals, in contracts involving character, skill, and confidence. Thus, where a contract provides for personal services requiring skill or personal confidence, no assignment may be made without the consent of the parties. Menger v. Ward, 87 Tex. 622, 30 S.W. 853, 855. The exceptions have been extended to contracts involving the extension of credit. Magnolia Petroleum Company v. Havoline Auto Supply Co., Tex.Civ.App., 172 S.W. 759. In the leading case on the subject in this jurisdiction, Dittman v. Model Baking Company, 271 S.W. 75, 77, Mr. Justice Stayton, speaking for the Commission of Appeals, in regard to the exceptions to the general rule, said: "They arise on account of suretyship; technical guaranty; personal relationship, as between master and servant; personal skill or services, as in such a case, or that of an attorney for his client; personal terms of contract, as where a particular obligee is made the measure of performance, the agreement is to supply what he 'needs,' or he is to be 'satisfied'; or confidence or trust, as from lender toward borrower—it being everywhere conceded that in such instances a man has a right to choose the individuals with whom he will deal."

This court had occasion to deal with the question of assignability of contracts in the case of Central Power & Light Company v. Purvis, 67 S.W.2d 1086, writ refused, and recognized the well-established exception to the general rule of assignability—that is, where the contract involves the extension of credit.

■ The contract in suit required Donico Production Company to sell and deliver unto Potter Pipe Line Company, Inc., all oil which may be produced from described land for a period of one year, and Potter Pipe Line Company to pay to the owners of said oil the posted market price on the dates of receipt thereof. The terms of the division order provided that the posted market price was that of the Potter Pipe Line Company, Inc., and provided that the oil delivered during a calendar month should become the property of the pipe line company on the day of its delivery, and was to be paid for by the pipe line company on the twelfth day of the subsequent calendar month. According to the allegations, the production company was delivering about 500 barrels per day from the leasehold. Within a calendar month, approximately 15,000 barrels or more of oil was being produced and delivered, and, according to the contract, payment was to be made therefor on the twelfth day of the succeeding month. In other words, there was, by the contract, an extension of credit by the production company to the Potter Pipe Line Company, Inc., to the extent of all the oil produced from said leasehold for a period of from forty-two to twelve days. Then, too, the price to be paid for the oil, according to the contract and the division order, which is made a part of the contract, was the "posted market price," posted by the Potter Pipe Line Company. The price to be paid for oil by a particular pipe line company depends upon a great variety of conditions and circumstances. One might be willing to sell all the oil he is able to produce to a purchaser at the price to be posted by that purchaser, and not be willing to make the same contract with any other purchaser.

Does it not appear from the fact that the production company made this agreement with the Potter Pipe Line Company, Inc., to accept for its oil the posted market price of the Potter Pipe Line Company, Inc., that the producing company did so because it had confidence in the pipe line company or had knowledge of the peculiar facts existing with the pipe line company, that its needs for the period of the contract

would likely be such that a fair price would be posted and paid by such pipe line company? It appears to us that the production company, in making this phase of the agreement, had a right to choose the obligee of that most important provision of its contract, and, it having selected the Potter Pipe Line Company, Inc., for the performance of such duty, the Potter Pipe Line Company, Inc., cannot substitute another for such performance without the production company's consent. To hold otherwise would destroy, we think, the right for the contracting parties to choose the parties with whom they confide and are willing to extend credit. We are of the opinion that these provisions of the contract bring it within that class of the well-noted exceptions to the general rule, and an assignment without the consent of the parties, while executory, cannot be made.

■ It is also contended by the appellants that injunctive relief is the proper remedy in this case, for the reason that they have no adequate legal remedy, and that the contract under review is a covenant running with the land. The argument is grounded upon the holding in the cases of Noble Oil & Gas Company v. Altex Petroleum Company, Tex.Civ.App., 230 S.W. 758, and American Refining Company v. Tidal Western Oil Corporation, Tex.Civ. App., 264 S.W. 335. Those cases involve the sale and purchase of casinghead gas produced from certain oil and gas leases. It is noted that the contracts in those cases were by their own terms made assignable. Also, the peculiar method of producing casinghead gas seems to be the controlling reason upon which the courts have based their holdings. Here the contract is for the sale and purchase of oil produced from the leasehold during a period of time, the delivery to be made by the seller after production, title to pass to the purchaser after delivery to it in its pipe line.

Therefore, while it may be that it is unnecessary to the decision of this cause in view of our previous holding, we are of the opinion that the appellants have a complete, adequate, legal remedy in a suit for damages for the alleged breach of the contract in suit. In the case of Simms v. Southern Pipe Line Company, Tex.Civ.App., 195 S. W. 283, 287, writ refused, there was an injunction granted by the trial court. In reversing the action of the trial court, the Galveston Court of Civil Appeals say: "This order cannot be sustained, because there is a plain, complete, and adequate remedy at law for the injury claimed to have been suffered by appellees. There is nothing in the facts alleged in the pleadings showing that the ordinary measure of damage for breach of contract of sale of personalty would not fully compensate appellees for any injury they have sustained or may sustain by the alleged breach by appellant of the contract of sale, nor are any facts alleged showing that it will be impossible, or even difficult, for appellees to establish their damage in a court of law."

While the appellants here attempt to make allegations in the nature of conclusion that they do not have an adequate remedy at law, they have also alleged the amount produced by the production company and that they are delivering the same to the Crown Pipe Line Company, all of which, it seems to us, negatives the idea that the damages accruing to them are not ascertainable. The appellants allege also in their petition that they are in the business of buying and selling oil produced in the Clarkwood area of the Saxet oil field of Nueces county, Tex., and that they expended approximately $2,000 in the construction of the branch pipe line to the lease, and that such connection will be rendered valueless.

It is a matter of common knowledge that under the conservation laws existing in this state the production of crude oil is limited, and that such production must be gauged and reported. We see no reason, therefore, for the basis of the general allegations in the nature of conclusions that the appellant's damages are speculative and are not easily ascertained.

■ Finally, it is argued that the Potter Pipe Line Company, Inc., still being liable for the performance of the contract in suit, that the assignment by it to the Amsco Pipe Line Company is not an extension of credit to the substituted obligee. It occurs to us that the Potter Pipe Line Company, Inc., having sold all of its pipe lines to the Amsco Pipe Line Company on or about August 1, 1937, and before the full performance of the contract, thereby rendering the performance of the contract by it impossible, is not in a good position to seek specific performance on the part of the production company. The contract being one involving confidence and trust, we are of the opinion that under the well-noted exceptions above stated it was not assignable without the consent of the parties, while executory.

For these reasons, the action of the trial court in sustaining the demurrer is correct, and the judgment will be affirmed.