**HEFFINGTON v. HELLUMS.**

No. 9721.

Court of Civil Appeals of Texas. Austin.

May 19, 1948.

Rehearing Denied June 9, 1948.

Shelton & Shelton and Emmett Shelton, all of Austin, for appellant.

Tom Gambrell, of Lockhart, and Henry Sebesta, of Bastrop, for appellee.

HUGHES, Justice.

This suit was originally filed by W. E. Richey and others January 26, 1945, against appellee, Harold Hellums, the General Crude Oil Company, and the Alamo National Bank.

The suit was for conversion of oil well equipment and for the conversion of oil produced from a 50-acre tract of land located in the Yoast Field in Bastrop County.

The petition alleged that on November 7, 1928, the owners of an oil and gas lease on the 50-acre tract made a contract with Cranfill and Reynolds for the development and operation of such lease, the contract providing that Cranfill and Reynolds were to take charge of, develop and operate the lease upon the following terms:

"$50.00 monthly executive expense to be charged against lease.

"⅙ of the field superintendent and his assistants monthly salary and expense, to be charged against this lease.

"Monthly statements are to be rendered by second party, with copies of field orders to first party.

"10% annual interest on all moneys advanced for development operations to be charged, said interest to run length of time second party is actually out of the use of said moneys so advanced. (Until pipe line settled.)

"This lease is to be operated by power and pumps, unless all parties interested deem it wise to make change.

"Second Party agrees to use their best effort to secure the lowest price for drilling contracts, and equipment and maintenance operation of said lease.

"Second Party agrees that after they receive full payment for the development and operating of said lease, that all monies received from the sale of production from said lease, after payment of expenses of development and operations, that they will pro-rate same according to the interest owned by the respective parties hereto, among the parties to this contract, their heirs, successors or assigns."

(First Party refers to owners and Second Party to Cranfill and Reynolds.)

That Cranfill and Reynolds developed the lease and operated it until November 16, 1932, during which time $200,000 worth of oil was produced at an expense of $30,-000, or less. That on November 12, 1932, Cranfill and Reynolds assigned their rights under the 1928 contract to Ralph Ogden who operated the lease until his death on April 19, 1944, and that during Ogden's operation of the lease more than $100,000 of oil was produced and $30,000 of equipment belonging to the lease was sold. That the Alamo National Bank, as independent executor of Ogden's estate, assigned the interest of the estate under the 1928 contract to appellee, Hellums, on August 1, 1944, and that during his operation of the lease $5,000 worth of oil was produced.

The petition further alleged that "under the terms of each and all of the instruments of agreement or lease or assignment herein pleaded and made a part of this petition, each of the defendants came into possession of the monies for oil sold from the lease, here involved, as money had and received, in a fiduciary capacity, in trust for these plaintiffs according to their just rights and shares."

Plaintiffs prayed for judgment in the sum of $129,056, with interest.

On November 1, 1946, the trial court dismissed the suit as to the Alamo National Bank and the General Crude Oil Company,

upon motion that the suit as to these parties had been fully settled.

On June 3, 1947, appellant, Heffington, filed a first amended original petition, in which he alleged that since the filing of the original petition he had acquired all of the interests of the original plaintiffs in the suit.

This pleading recognized the settlement made between the original plaintiffs and the Alamo National Bank and the General Crude Oil Company, which company was alleged to be the same as Cranfill and Reynolds, and these parties were not named as defendants.

While pleading the same basic facts, appellant considerably altered the theory of the case in that he alleged the 1928 contract to be incapable of assignment by Cranfill and Reynolds and that appellee was a trespasser and liable as such; in the alternative, appellant alleged that appellee had breached the contract by failing to sell the oil production to the Magnolia Pipe Line Company and in failing to account. Prayer was for money damages, a temporary restraining order, the appointment of a receiver pending final hearing, that appellee be required to file an accounting under oath and for foreclosure of an equitable lien.

On September 8, 1947, appellee filed his first amended original answer in which he alleged that the indebtedness under the 1928 contract was $27,000 when the assignment was made from Cranfill and Reynolds in 1932, and that oil production had been insufficient since such time to reduce the debt, and that appellant was estopped to question the amount of this debt on the ground that his predecessors in title had knowledge of the debt claimed and raised no objections thereto.

On September 7, 1947, appellant filed what is styled a first supplemental petition, in which he, for the first time, asked for rescission of the 1928 contract on the ground that appellee had violated its provisions. By trial amendment, appellant amended his prayer so as to pray for recovery of the lease, free from all claims of appellee, in the event the court should hold the 1928 contract unassignable.

Appellee's supplemental answer, filed September 27, 1947, pleaded the long operation of the lease by Ogden under his assignment from Cranfill and Reynolds, with the knowledge of and without objection by, appellant's predecessors in title, and other acts, as barring appellant from asserting that the 1928 contract could not be assigned, under the doctrines of estoppel and waiver.

The jury in answer to special issues found:

(a) That appellee had failed to make monthly reports to appellant and his assignor, and had failed to use his best efforts to secure the lowest price for maintenance operation of the lease since August 1944; (b) that the reasonable cost of producing and marketing a barrel of oil from the lease since August 1944 was 75¢ per barrel; (c) that appellant and his predecessors in title negligently failed to object to Ogden and appellee operating the lease under the 1928 contract within a reasonable time after acquiring their respective interests; (d) that appellee relied on this failure in purchasing the 1928 contract from Ogden; and (e) that appellant knew that appellee believed, at the time of his purchase, that the 1928 contract was assignable.

Upon the verdict, the court rendered judgment denying appellant any recovery and granting appellee the right to keep possession of the lease and to produce and market the oil therefrom at a cost not to exceed 75¢ per barrel, and directing that the net proceeds be applied on the unpaid balance of $27,000, with interest on such balance at the rate of 6% per annum, upon the payment of which debt the title to and possession of the lease to vest in its owners, their heirs or assigns.

The first two points turn upon the assignability, vel non, of the 1928 contract.

■ The general rule is that all contracts are assignable. Exceptions to the rule are found in contracts involving character, skill and confidence. Amsco Pipe Line Co. v. Donico Production Co., Tex. Civ.App., San Antonio, 112 S.W.2d 483 (Writ Dis.), and authorities there cited.

■ When the first assignment from Cranfill and Reynolds was made, the lease

had been fully developed. The only substantial rights passing by the assignment then were the debt due Cranfill and Reynolds and the right to operate the lease until the debt was paid. There can be no question but that the debt due Cranfill and Reynolds was assignable, for it has been held that "everything which may be called a debt may be assigned." 5 Tex.Jur., p. 7.

■ It is only the right to operate the lease which gives concern, and we are not convinced that, as presented here, this operation calls for the exercise of personal skill or that confidence, character or trust enters into the undertaking so as to preclude assignability. There is one well on the lease in question. Before appellee bought the 1928 contract, he had operated this one well for Ogden; he also worked wells on an adjoining lease and tended to wells on a near-by tract owned by appellant. The evidence further shows that R. C. Clark owned one well in Caldwell County and that he hires a tenant farmer to run the well for him. B. E. Pierce testified that he had 5 wells eight miles east of Taylor, and that he pays a man $100 per month to operate them.

When we consider that the 1928 contract contemplated the expenditure of large sums of money in developing the property, the only security for which was in the oil the parties hoped to find, and as an incident to this security the right to operate the lease, and that the debt thus created is assignable, and the contract not prohibiting the right of assignment, we are of the opinion that the assignability of the debt carries with it the right to assign the security and the right to operate the well until the debt is paid.

Overby v. Mona Marie Trust, Tex.Civ. App., Ft. Worth, 240 S.W. 581, holds a contract to drill an oil well is assignable. This case was cited with approval in Phillips v. Oil, Inc., Tex.Civ.App., Eastland, 104 S.W. 2d 576, 579 (Writ Ref.), where the court upheld the right to assign a contract providing for the operation of an oil and gas lease. While this case is distinguishable because of the use of the word "assigns" in the contract, the court used language which sup-

ports our holding that the right to operate the lease passed as an incident of the debt:

"* * * The conveyances from Phillips to Hoffman showing that the interest in the leases transferred to Hoffman is assignable, it would not be reasonable to contend that it was intended that Hoffman, after divesting himself of all ownership and interest in the property, was expected to continue as the exclusive manager and operator of property in which he had no interest, and for which no remuneration, in such event, was provided. There is nothing in the written contracts to indicate the existence of such intention. Under these circumstances, we think the trial court did not err in concluding, as it evidently did, that Oil, Inc., had acquired, along with its interest in the property, the right of operation thereof."

If the assignment of the leases carried the right of operation, it logically follows that the assignment of the debt, in the case before us, carried with it the right to operate the lease for the purpose of paying the debt. The transfer of a debt includes liens securing the debt and all incidents pertaining thereto. 5 Tex.Jur., p. 44.

■ We also find the evidence sufficient to support the findings of the jury that appellant and his predecessors in title have acquiesced in the assignments of the 1928 contract. The pleadings have been fully analyzed for the purpose of showing that before appellant purchased his interest the original plaintiffs did not attack the assignments as being invalid, but expressly pleaded the assignments as a basis of recovery. C. E. Richey, a witness for appellant and one of the original plaintiffs, purchased the interests of his co-plaintiffs in 1943. He knew that Ogden owned the operator's contract and tried to buy it. He also knew that Hellums (appellee) was operating the lease for Ogden. Richey sold out to appellant in June 1947. Appellant testified that he knew about this lawsuit and the details of the controversy when he bought from Richey; also that he had known appellee for about four years and knew that he (appellee) was working for Ogden. In fact appellant bought oil from

this lease during the time appellee operated it for the Ogden estate. Ogden and his estate operated the lease, under the Cranfill and Reynolds assignment, for about twelve years, a period of time longer than necessary to acquire title to land by adverse possession, yet no objection was made by any of the interested parties.

Appellant, of course, has no better rights than his predecessors in title. 5 Tex.Jur., p. 43. It would be most inequitable for appellant, under the facts above stated, to prevail in his contention that the 1928 contract was not assignable. In our opinion he is estopped from so contending. Humble Oil & Refining Co. v. Harrison, Tex.Sup., 205 S.W.2d 355.

The jury having found that appellee breached the 1928 contract by failing to make monthly reports and in failing to use his best efforts to operate the lease at the lowest cost, appellant insists that the trial court erred in not rescinding the contract. There were several sufficient reasons for denying this relief.

■ The general rule is that the equitable relief of rescission will not be granted for the mere breach of a contract, the remedy at law being ordinarily adequate. Check v. Metzer, 116 Tex. 356, 291 S.W. 860.

■ This rule applies here. Full relief and justice can be awarded appellant without forfeiting appellee's contract by rescission.

■ The 1928 contract is not wholly executory. It has been partially and substantially performed to such an extent that counter equities (the unpaid balance of monies spent for development and operation) have arisen, which appellant does not offer to satisfy. Under these circumstances rescission is inequitable and will not be granted. Hausler v. Harding-Gill Co., Tex.Com.App., 15 S.W.2d 548.

■ Rescission must be demanded within a reasonable time. 10 Tex.Jur., p. 387.

■ The evidence shows that appellee has been operating the lease in the same manner as Ogden did for 14 years. The right of rescission, if it ever existed, has been lost by laches.

Appellant's last assignment of error attacks that portion of the judgment finding $27,000 to be the unpaid balance due appellee under the 1928 contract, as not being supported by the pleadings or finding of the jury.

Appellee did plead that this amount was still due under the contract; his prayer was, however, only that appellant recover nothing by his suit. The only accounting sought by appellant was of the oil produced and sold since August 1, 1944. The only evidence of the amount owing is found in a statement made by appellee and attached to his deposition which was offered in evidence by appellant, and in a recitation contained in the assignment from Cranfill and Reynolds, made in November 1932, to Ogden. The statement was not itemized but showed the balance owing as of July 31, 1947, was $51,798.49. The recitation in the assignment was that "it is understood that assignor has expended the sum of approximately $27,000 in the operation of the above described lease, in excess of the revenue derived therefrom."

No issue as to the amount owing under the 1928 contract was submitted to the jury or requested.

The sufficiency of the pleadings as to the issue of the amount due under the 1928 contract is, perhaps, doubtful. Appellant did not raise the issue and appellee asked for no relief concerning it. Certainly it cannot be said that the parties tried such issue with any degree of skill or efficiency, which fact induces the belief that the parties did not construe the pleadings as raising the issue.

■ The trial court evidently accepted the recitation in the 1932 assignment as the basis for his judgment that $27,000 was due under the 1928 contract. This statement is patently hearsay and no judgment could be based upon it even though admitted without objection. Sinclair Prairie Oil Co. v. Perry, Tex.Civ.App., Texarkana, 191 S.W.2d 484

■ For these reasons, we have concluded that the trial court erred in finding that there is yet $27,000 due under the 1928 contract, and as to this portion of the judg-

ment, the cause is reversed and remanded; as to all other matters the judgment is affirmed. Costs of this appeal are assessed one-half against appellant and one-half against appellee.

Affirmed in part; reversed and remanded in part.

On Appellant's Motion for Rehearing.

Appellant says that in holding he was not entitled to rescind the contract we are in conflict with the decision in Thompson v. Duncan, Tex.Com.App., 44 S.W.2d 904.

This cannot be correct for the reason that the case cited did not involve rescission, the court stating that the action was "not one for a rescission of the contract, but rather for dissolution and accounting."

Also, our decision was based upon laches, waiver and other matters not present in the case cited.

The motion is overruled.

Overruled.