**CARRAS v. BIRGE et al.**

No. 13925.

Court of Civil Appeals of Texas. Dallas.

April 30, 1948.

Rehearing Denied May 28, 1948.

Gormley & Ragsdale, of Dallas, for appellant.

Mark E. Kramer and Stanley C. Hogg, both of Dallas, for appellees.

BOND, Chief Justice.

Appellees John Birge and Charles Reynolds instituted this suit against appellant Gus Carras and a Mr. Fields for damages resulting from breach of contract. Fields was joined in the suit as co-respondent to the breach, but, for the judgment in his

favor, he is not a party in this appeal; hence will not be herein further noticed. For convenience, appellees and appellant Carras will be designated respectively as in the court below,—plaintiffs and defendant.

The contract is in writing, signed by the parties on June 17, 1947, and a copy is attached to plaintiffs' petition and made a part thereof. The contract provides, in effect, that plaintiffs were to furnish all material for, and to erect a building of specified dimensions, of the kind and character as therein provided; and, further, plaintiffs were to supervise all work of other sub-contractors on the job for the completion of the building, not otherwise specified to be done by the plaintiffs; and that everything listed in the contract was to be completed in the "quickest possible time." For all of which the defendant was to pay plaintiffs, for that portion of the building they were to do, the sum of $12,-166.78, payable "$1,000.00 to be retained until the building is completed; 10 percent to be paid on cost plus basis at intervals not exceeding every (15) fifteen days, and $1,000.00 to be deposited in drawing account weekly as job progresses, or more frequently if needed." The remainder of the building was to be supervised by the plaintiffs "on a cost plus basis of 10 percent."

Plaintiffs allege in their petition that the building was to be erected in accordance with the contract on certain designated lots belonging to the defendant, located in the City of Dallas, and that "At all times since the execution of the above described contract, plaintiffs have been ready, willing and able to carry out their part under the terms of the contract. That upon application to the City of Dallas for a construction permit covering the above described building, it was learned that such permit could not be issued until a change could be made in the zoning ordinances of the City. That defendant Carras then informed plaintiffs he could and would secure the said permit and would advise plaintiffs immediately upon its receipt." That defendant received the permit, but contrary to his agreement, failed to notify plaintiffs of its receipt;

and, immediately thereafter, without plaintiffs' knowledge or consent, entered into contract with Mr. Fields to construct the building and has steadfastly, since said time, "refused to permit plaintiffs to construct the building and has renounced said contract", all to plaintiffs' alleged damages in "loss of profits" specifically enumerated.

Defendant, by answer, in addition to numerous special exceptions dealing with the insufficiency of plaintiffs' petition to state a cause of action, and general and special denials, affirmatively pleaded in his own behalf "that he signed the contract declared upon by plaintiffs about the 17th day of June, 1947, whereby they agreed to construct a building upon lots owned by him, numbered 414, 416, 418 and 420 on Gilpin Street in the City of Dallas, Texas; but when he signed the contract he did not know that a duly enacted zoning ordinance of the City of Dallas, then and there in force, prohibited and penalized the erection of business buildings on said premises, which lots, by said ordinance were zoned for residential purposes only; and in this connection defendant Carras shows to the Court that he does not believe that at the time plaintiffs herein knew that said premises were zoned for residential purposes only, because they assured him that they would obtain a permit from the City authorities immediately and proceed to the erection of said building." Defendant further alleged "that two or three days later plaintiffs did apply to the city authorities for a permit to build the business building contemplated by the said contract, but that said permit was denied; that almost immediately thereafter plaintiffs contacted defendant Carras and told him that they had been unable to obtain a permit because the premises were zoned for residential purposes only; that this was his first knowledge that his premises were so zoned, and when plaintiffs told him that they were so zoned he told them that they would have to forget the written contract because he did not intend to violate the city ordinance in the premise or otherwise attempt to persuade the city authorities to grant him any special privilege in the premises."

Defendant Carras further alleged "that some three months later, on or about September 17, 1947, the city authorities re-zoned said region by ordinance duly enacted, which ordinance removed the building restrictions on the said premises and thereafter defendant was duly notified that said original building restrictions had been removed; whereupon he contacted his codefendant, C. T. Fields, and entered into a contract to build a business building on said premises according to plans and specifications made by said Fields. That when he entered into said building contract with his codefendant Fields, defendant believed and had the right to believe that his said original contract with plaintiffs had been abandoned because of its utter illegality in the premises and because he had told plaintiffs that he did not propose or attempt to carry it out as soon as he learned that it was a violation of the city zoning ordinance. That during said three months which intervened between the execution of said contract of June 17, 1947, and the execution of his said contract with C. T. Fields, plaintiffs never approached him or otherwise gave him any intimation that they considered said contract of June 17, 1947 in force between them."

At the conclusion of plaintiffs' evidence, the defendant declined to offer direct affirmative testimony. The ordinances of the City, alleged by the defendant voiding the contract as being illegal, were not offered in evidence. Whereupon, the court, trying the case without a jury, overruled defendant's exceptions to plaintiffs' pleadings and, on the pleadings and evidence, entered judgment in favor of plaintiffs against defendant Carras for the sum of $2,500 and costs of suit. From which judgment the defendant Carras perfected his appeal. .

 Appellant's assignments and points of error to the action of the court in overruling his exceptions to appellees' pleadings and evidence, and rendering judgment on the contract and for damages, are primarily based upon the contention that the contract was void, unenforceable because of the action of City of Dallas authorities in refusing to issue to the plaintiffs a permit to construct the contemplated building as being in contravention of ordinances of the City. It will be observed from the record that the defendant neither pleaded nor offered proof of any ordinance in force affecting his property when the contract was made, which would prohibit the construction of the building. Nor was any such ordinance admitted or offered in evidence as would make the contract void. The mere fact that the City authorities refused a permit, a regulatory measure usually incident to zoning and for taxation purposes, carrying with it a penalty for construction of buildings for nonconforming use in absence of such authority, does not vitiate a contract as here involved, in absence of some reservation to that effect. Indeed, "A contract to do a thing which cannot be performed without a violation of the law is void, * * *." Texas Employers' Ins. Ass'n. v. Tabor, Tex.Com.App., 283 S.W. 779, 780. However, a contract that could have been performed in a legal manner will not be declared void simply because some governmental or city official refused to extend authority which, in effect, presently prevents performance; and, too, in absence of some showing that such official was acting within the purview of the law or ordinance, and that such action absolutely prohibited the performance of the contract. Court cannot assume a contract void, simply because some hearsay testimony is to the effect that its performance could not be done without the sanction of some official. If a party to a contract desires to raise the issue of its illegality, he should specially plead such issue and submit proof of its existence.

 In the case at bar, defendant having alleged no ordinance of the City of Dallas in force which absolutely prohibited the construction of the building contracted to be built, mere allegation that the lots were zoned for residential apartment purposes does not imply that a permit could not be issued by the proper City officials for construction thereon of a building for mercantile business. "The courts do not take judicial knowledge of the ordinances of municipal corporations. They stand upon the same footing as private and special

statutes, the laws of other states, and of foreign countries, and must be averred and proved like other facts." City of Austin v. Walton, 68 Tex. 507, 5 S.W. 70, 71; City of Amarillo v. Tutor, Tex.Com.App., 267 S.W. 697; Risk v. City of Shamrock, Tex.Civ.App., 61 S.W.2d 153. Hence if any ordinance existed absolutely prohibiting the performance by either or both of the parties to the contract, and no method is therein provided whereby the contract could be performed without violation of the ordinance, then, and only then, could the contract be held void. The mere imposition of regulatory or permissive conditions, does not render such a contract illegal. Even had a controlling zoning ordinance of the City, requiring a permit, been presented on trial of this cause, still such would not have established, ipso facto, the illegality of the contract in suit, so long as there existed a method, procedure or course of action making it possible for a permit to issue within the time as contemplated by the contracting parties. It will be seen that the contract in suit provides that the building was to "be completed in the quickest possible time", which necessarily implies that "everything listed" in the contract was to be started in the "quickest possible time" for its completion to be on time. Hence, if, in fact, the refusal of a permit delayed construction of the building,—a possible deterrent for beginning of performance—manifestly such was removed when the permit was subsequently granted. The delay in such circumstances presents no cause for defendant to renounce the contract, justifying its breach, simply because a permit was not available at the time of the execution of the contract, or immediately thereafter.

The only evidence touching the question of zoning of the region where the building was to be erected, was the hearsay testimony of the defendant Carras, who admitted that he knew nothing about the zoning ordinances; and the testimony of plaintiff Birge that after the contract was entered into, he applied for a building permit, only to be advised by the City authorities that the area was not zoned at that time and they would refuse to issue the permit, solely because "They would have to have a meeting with the City planners to determine that zoning area." Manifestly, if the area was not zoned, a permit was not an essential prerequisite for the construction of the building; or, if it was zoned at the time of the execution of the contract, or was subsequently zoned, there is no evidence that a permit would not be available when the zoning was put into effect. The region where the building was to be erected was in a commercial area, at or near the City limits, with other mercantile enterprises located adjacent to and near the lots in question; hence we see no reasonable grounds why a permit could not have been secured within the "quickest possible time", carrying out the terms of the contract. We think the defendant having made no effort to secure all necessary prerequisites to accomplish the purpose of the contract; but simply relying on what some City official said—that a permit could not be presently issued and that the building could not be erected until the area was zoned—presents no legal ground to hold that the permit could not have been secured, or that the contract was void. It is in evidence that a permit was subsequently issued to the defendant and immediately thereafter the defendant made contract with Mr. Fields to erect the building; and that, too, without the knowledge or consent of the plaintiffs, and after plaintiffs had begun to locate and assemble the materials, had the City engineer establish the grade, and arranged for excavation for the building site,—truly, began compliance with his contract, and had assurance from defendant that he would let them know when the permit was secured and when they should begin the erection of the building.

■ We think defendant's assignments and points of error challenging the legality of the contract on which plaintiffs' cause of action is based as being in contravention of some undisclosed ordinance of the City of Dallas, are without merit. Plaintiff Birge testified that at all times he had been ready, willing and able to erect the building; that he called upon the defendant several times after the contract was signed, and before the permit was finally issued,

and that at all times he was assured that when the permit was secured, he would be notified immediately. Under such circumstances plaintiffs are entitled to recover for defendant's breach.

■ For breach of contract, as here alleged, the general rule is to give the injured party compensation; that is, put the plaintiff as near as may be in as good a position as he would have been, had the defendant kept his contract. Evidently both plaintiffs and defendant recognized the efficient cause for delay in securing the permit for erection of the building. Some delay in performance may reasonably be expected in most building undertakings, especially so during the period, as here involved, when building materials are hard to get, some hindrance existed to secure permits, and other interferences with performance of such construction. An unavoidable delay for a reasonable time certainly is no cause for breach of contract.

"Loss of profits that he would have derived had he been permitted to perform may be recovered by the contractor where he has been prevented by the owner from completing the contract or from doing any work under it, or where he has justifiably abandoned further performance because of a breach by the owner,—provided that this element of damages can be proved with reasonable certainty and is shown to have been within the contemplation of the parties. The amount of the recovery in this respect is measured by the difference between the contract price and what it would have cost him to carry out the contract in accordance with its provisions and the plans and specifications, the presumption being that the contractor would have performed entirely had he not been prevented from so doing. The probable cost of completing the work may be established by proof of the value of the material, labor and skill required, the cost of the necessary labor and materials being determined as of the date of the breach. The reasonable value of the contractor's time which he would have used in the erection of the building should be deducted. His relief from anxiety, trouble and risk which would have been attendant upon the performance of the contract may not be considered in mitigation of damages. The owner may show that it was impossible for the contractor to have completed the contract by reason of his insolvency, for the purpose of disclosing that the loss of profits was attributable, in part at least, to his own inability to perform, and not altogether to breach by the owner. The sufficiency and probative force of the evidence as to loss of profits is for the jury's determination." 7 Tex.Jur. 636, sec. 69.

■ Plaintiff Birge testified that they would have made more than $2,400 profit in constructing that portion of the building which he had contracted to build; and between $1,500 and $1,800 profit on that portion to be constructed by subcontractors on "cost plus ten percent basis". In his testimony he offered detailed computation showing the loss, but, on objection, the defendant expressly waived any detailed break-down. We think the record supports the judgment of the trial court for $2,500.

We have carefully reviewed the record germane to each of appellant's assignments and points of error, and, finding no error in the action of the trial court in reference thereto, each is overruled; judgment affirmed.

On Motion for Rehearing.

Appellant in motion for rehearing hinges points of error to avoid liability for breach of the contract being in contravention of zoning ordinances of the City of Dallas, perforce of appellees' pleadings without other proof by appellant to sustain such defense. The portion of the pleadings urged to sustain this contention is as follows:

"That at all times since the execution of the above described contract, plaintiffs have been ready, willing and able to carry out their part of the terms of the contract. *That upon application to the City of Dallas, Texas, for a construction permit covering the above described building, it was learned that such permit could not be issued until a change could be made in the zoning ordinance of the City of Dallas, Texas.* That defendant Carras then informed plaintiffs that he could and would secure said permit

and would advise plaintiffs immediately upon its receipt."

▆▆▆▆▆▆ We emphasize in italics the portion related which appellant contends is an admission or waiver by appellees to the introduction of ordinances of the City of Dallas, or other evidentiary matter by appellant to show that the construction of the building within the contemplated area would be in contravention of the City ordinances, thus the contract was void ab initio and the breach, or resulting damage, is damnum absque injuria. We think the above recited allegation is no admission or waiver of proof by appellant to sustain his contention, the burden being on him to sustain his defense that the contract was void. The mere allegation that after the contract was entered into by the parties, they learned from some unrelated source that a construction permit could not be issued "until a change could be made in the zoning ordinance of the City of Dallas" is no admission as a fact that the City ordinances then in force affected this property, or that, as a matter of law, a contractual permit could not have been secured by some means agreeable to law. The reasonable inference is that refusal of the permit at the time the application therefor was made, as alleged, was to afford the City to change "the zoning ordinance of the City of Dallas," evidencing that the area was either not then zoned, or that some restriction of use or construction on the property was to be made by the City, certainly not a legal, concluded bar, or hindrance to a final issuance. Such is evidenced by the immediate succeeding sentence to the allegation: "That defendant Carras then informed plaintiff that he could and would secure said permit and would advise plaintiff immediately upon its receipt"; and from evidence, on trial signally showing that at the time the contract was entered into the area where the building was to be erected was a part of a proposed commercial center outside the limits of the City of Dallas, and subsequent efforts of the appellant to contact appellees to advise them that the permit had been secured by him in furtherance of the contract obligations. The defendant testified without objection to questions as follows:

"Q. Now, what kind of a building do you have across the street directly from your place?. A. Nothing—vacant lot.

"Q. Well, isn't there a—aren't there two buildings across the street from you? A. Yes.

"Q. What are they? A. One is a laundry, the other is a home further down from my property. It's a home.

"Q. This home has—there is a grocery store across the street from you? A. Yes, there is a home with a grocery store on one side.

"Q. Didn't they have a beauty parlor or some other type of business there? A. I don't know what you have on the other side. I know there is a grocery store there.

"Q. But they are commercial and retail businesses across the street? A. I guess so.

"Q. And a building stationed on the corner? A. Yes. * * *

"Q. All right, Mr. Carras, you intended in the construction and operation of your business there to be a law abiding citizen, did you not? A. Yes.

"Q. That's right. Now, when did you first learn that the City would not at that time grant a permit to build it just like you wanted it? A. The property is off of the City limits—they put it on the City limits—and I thought it was business property at the time I made the agreement with these boys.

"Q. You think it was business property? A. Yes. * * *

"Q. As soon as they told you that the City had not—at that time the City was making—taking in a lot of territory in the City limits, were they not? A. Yes.

"Q. I see. And you know that at that time they were zoning and rezoning and setting up business and building code restrictions of the City? A. No, I find out at the time the boys go there to get the permit. * * *

"Q. Wait just a minute; just answer the question. You told them at the time they said they couldn't get the permit right then that you would get a lawyer and go up there and get that permit, did you not? A. No.

"Q. Did you get a lawyer and go up to the City about changing that and getting a permit? A. Yes, I got a lawyer.

"Q. You got—Do you know John Butera? A. Yes.

"Q. And you hired John Butera to get that permit for you? A. Yes.

"Q. And John Butera got that permit? A. Yes."

On the same issue plaintiff Birge testified, without objection, to questions, as follows:

" * * * Well, Mr. Birge, what type of buildings are in that vicinity on Gilpin Street? A. Well, across the street on your right, looking west, there is a cleaning plant; on the left, on the opposite side, there is another building being erected now right across the street from Mr. Carras's building.

"Q. Now was that somewhere about the time that this particular piece of property was taken into the City limits of Dallas? A. I don't know when the property was taken into the City limits.

"Q. Did you have any discussion with Mr. Carras with relation to the question of building this particular type of building on that particular piece of property? A. That was—that is a part of a proposed shopping center to be eventually built there.

"Q. To be built into a shopping center? A. Yes, sir.

"Q. And did you have any discussion with Mr. Carras about whether or not you would have any difficulty in securing a permit? A. At the time we thought the permit would be available because it wasn't in the City limits and there was business buildings all around this property.

"Q. It was in an area where business buildings were located? A. Yes, sir.

"Q. There are no residences in that block, are there? A. No, sir."

The appellant having failed to offer evidence, or in anyway advise the trial court of the existence of a legal obstacle affecting the parties from carrying out the contract, the court would not have been warranted to assume the contract was void, simply because, in the light of the record here presented, the applicant for permit "learned" that a "construction permit" could not be issued "until a change" could be made in the City ordinance. If the area involved was zoned as to effectively prevent construction, voiding the contract, the zoning ordinance should have been brought to the attention of the trial court, and to this court. In absence of which, we have sustained the action of the trial court; appellant's motion for rehearing is overruled.