**Ariel PENICHE, Appellant,**

v.

**AEROMEXICO, Appellee.**

No. 17294.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 5, 1979.

Saccomanno, Clegg, Martin & Kipple, Carl T. Schultz, Houston, for appellant.

Dow, Cogburn & Friedman, Ronald E. Tigner, Houston, for appellee.

Before COLEMAN, C. J., and PEDEN and DOYLE, JJ.

DOYLE, Justice.

This is a suit for damages arising from a tortious breach of contract. Appellant, Ariel Peniche (Peniche), sued Aeromexico, Appellee, for not permitting him to continue to perform in accordance with the written agreement to which he and Aeromexico were parties. Rodolfo Fabre signed the agreement on behalf of Aeromexico, as District Manager. For the manner in which the agreement was terminated by Aeromexico, through its Director for North America and Canada, Carlos Mario Gutierrez, Ariel Peniche, also sought damages for slander per se. Aeromexico cross-claimed against Rodolfo Fabre saying that he was without the authority to bind Aeromexico and prayed for indemnification.

Trial was to a jury. Testimony by Peniche was in Spanish through an interpreter. At the conclusion of plaintiff's evidence, defendant moved for a directed verdict that plaintiff take nothing on the grounds that the agreement upon which plaintiff sued was illegal for the reason that plaintiff did not have a chauffeur's license. The court granted defendant's motion and rendered a judgment that Ariel Peniche take nothing against Aeromexico and that Aeromexico take nothing against Rodolfo Fabre.

From this verdict, Peniche appealed, filing a pauper's oath pursuant to Rule 355, T.R.C.P. Defendant, Aeromexico, and District Clerk, Ray Hardy, filed motions contesting Peniche's inability to pay the cost of this appeal. Testimony at this hearing consisted of an affidavit filed and signed by Peniche's attorney, Carl T. Schultz. After the hearing, the court sustained the oath on the condition that Peniche pay $25.00. This Peniche did and filed a sworn Cost Deposit

for Appeal by and through his attorney. The perfected appeal is now before this court.

■ Before discussing Peniche's point of error, we address Aeromexico's first point of error since it alleges our lack of jurisdiction to decide this appeal. Aeromexico argues that Peniche failed to comply with Rule 355 of the Texas Rules of Civil Procedure. It provides in part as follows:

(a) When the appellant is unable to pay the cost of appeal or give security therefor, he shall be entitled to prosecute an appeal by filing with the clerk his affidavit stating that he is unable to pay the cost of appeal or any part thereof, or to give security therefor.

\* \* \* \* \* \*

(d) Upon such hearing the burden of proof shall rest upon the appellant to sustain the allegations of his affidavit.

. . .

We have reviewed the affidavit filed by Mr. Schultz and the statement of facts made at the hearing on the pauper's oath. It is true that Peniche did not file the affidavit himself and Mr. Schultz does not state therein that he has personal knowledge of the contained facts as required by Rule 14, T.R.C.P. Such omission has been held to render the affidavit a statement of hearsay and thus ineffectual to confer jurisdiction on a court of civil appeals. *Winn v. Federal Land Bank of Houston,* 164 S.W.2d 864 (Tex.Civ.App.—Galveston 1942, writ ref'd); *Landscape Design and Construction, Inc. v. Warren,* 566 S.W.2d 66 (Tex.Civ.App. —Dallas 1978, no writ). Agreeing that Peniche did not meet the burden of proof imposed upon him by Rule 355, T.R.C.P., we think this point became moot when Peniche filed his Cost Deposit for Appeal, which this court considers to be sufficient as an appeal bond. The instrument is in substantial conformity with Rule 354, T.R.C.P., and shows that Peniche has paid $25.00 as ordered by the trial court, has bound himself to "prosecute the appeal with effect, and, if so ordered, shall pay all the costs which have accrued in the trial court and the cost of the statement of facts and transcript." Under the liberal provisions of Rule 430, T.R.C.P., upon proper motion, this court will grant the right to amend the bond. *Lusher v. First Nat. Bank of Ft. Worth,* 260 S.W.2d 621 (Tex.Civ.App.—Ft. Worth 1953, no writ); *Grogan Mfg. Co. v. Lane,* 140 Tex. 507, 169 S.W.2d 141 (1943); *Bean v. Hardware Mutual Casualty Company,* 349 S.W.2d 284 (Tex.Civ.App.—Beaumont 1961, ref. n. r. e.).

■ By a single point of error Peniche complains of the trial court's granting defendant's motion for a directed verdict on the ground that the contract sued on was illegal and in not finding that plaintiff had pled and proved a prima facie case of slander per se before the court granted defendant's motion for directed verdict. The contract or agreement between Ariel Peniche and Aeromexico is set out on the letterhead of the airlines dated March 1, 1974. The letter is brief and we set it out in its entirety.

March 1, 1974

Mr. Ariel Peniche
12523 Fieldworth
Houston, Texas 77037

Dear Mr. Peniche:

In reference to our conversation, this is to *reconfirm* that AEROMEXICO will guarantee you a minimum four trips a day between the Airport and the Sheraton Lincoln Hotel and viceversa, for a minimum of one year.

It is hereby understood therefore, that you will provide individual transportation per crew in a station wagon, which is not older than two years and which is clean and well maintained. You will continue to carry the insurance coverage and the price will continue to be $13.00 U.S. Cy per trip.

It is also understood by AEROMEXICO, that if there should be a considerable increase on the price of gasoline, a consideration will be made on the price, based on the increase of the cost of gas.

If you are in agreement with this letter, please sign at the bottom of this letter.

Very truly yours,

/s/ Rodolfo H. Fabre
District Manager

RHF/mp

cc: Divisional Manager
for the U.S. & Canada—MIA

AGREED: /s/ Ariel Peniche
MR. ARIEL PENICHE

Peniche contends that there is nothing in the contract which on its face shows that it is an illegal contract or forbidden by law in any way and that there is nothing in the performance of the contract which would require Mr. Peniche to do an illegal act. Aeromexico argues that inasmuch as Peniche did operate a vehicle for hire without a chauffeur's license, which is undisputed, and that the carrying of the passengers to and from the airport for Aeromexico was done for hire, that Peniche was required to have a chauffeur's license and that his failure to have such a chauffeur's license was in direct violation of V.A.T.S. Article 6687b. Aeromexico also contends that the contract upon which Peniche bases his cause of action is void because a contract cannot require performance in violation of the law.

In the opening sentence of the letter, it will be noted that Mr. Fabre states that "this is to reconfirm that Aeromexico will guarantee you a minimum of four trips a day between the airport and the Sheraton Lincoln Hotel and vice versa for a minimum of one year." This language suggests that the parties had already agreed upon the terms of the contract and that the written letter was merely a reconfirmation of the agreement of the parties. It is obvious from the contract that if Peniche is to drive the crews of Aeromexico to and from the airport and the hotel as was the agreement of the parties, that he would have to drive the station wagon as a chauffeur as that term has been defined by Texas law, to the effect that "every person who is the driver for wages, compensation, or hire, or for fare, of a motor vehicle transporting passengers", as clearly set out in Article 6687b(o). The permanent Texas laws relating to the operation of vehicles for hire by chauffeurs and the hiring of such persons are set out in the articles listed below.

Article 6687b, Section 36 makes it unlawful to permit a vehicle to be driven by one unlicensed as a chauffeur.

No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized hereunder or in violation of any of the provisions of this Act.

Article 6687b, Section 37 prohibits the employing of an unlicensed chauffeur or commercial operator.

No person shall employ as a chauffeur or commercial operator of a motor vehicle any person not then licensed as provided in this Act.

Article 6687b, Section 44 prescribes that a violation of that statute shall be a misdemeanor and is punishable with a fine.

(a) It shall be a misdemeanor for any person to violate any of the provisions of this Act unless such violation is by this Act or other laws of this State declared to be a felony.

(b) In addition to any other penalties hereinbefore provided, and unless another penalty is in this Act or by the laws of this State provided, every person convicted of a misdemeanor for the violation of any provision of this Act shall be punished by fine of not more than Two Hundred Dollars ($200).

Ordinarily the Texas courts will not enforce an illegal contract, particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare, and it is the duty of the court to at once decline to give it any validity. This question was before the court in *Montgomery Ward & Co. v. Lusk*, 52 S.W.2d 1110 (Tex. Civ.App.—Waco 1932, err. dism'd). There both parties had agreed to pay the plaintiff for 202 hours of overtime work. However, a provision of the Texas Penal Code provided that no female should be employed in a mercantile establishment working more than nine hours per day nor more than fifty-four hours in any calendar week. The

**156**

court refused to allow a recovery under the contract because the contract was illegal and in violation of Article 1569, Texas Penal Code, 1925. The court further stated, referring to Article 1572 which imposed a penalty on the employer for violation of the act, but did not fix a penalty on the employee, that "[i]t is in the nature of a state police regulation and is intended for the protection of the public health and the perpetuation of the human race, and is therefore for the benefit of the public generally. . . . To permit individuals to enter into contracts to violate the law and then invoke the aid of the court to secure the benefits thereof would be to encourage the doing of the very thing the law prohibits."

The Texas Supreme Court in two cases, *Rogers v. Traders & General Ins. Co.,* 135 Tex. 149, 139 S.W.2d 784 (1940) and *Service Mutual Ins. Co. of Texas v. Blain et al.,* 140 Tex. 541, 168 S.W.2d 854 (1943) construes contracts violating Texas State statutes. In *Service Mutual* the court denied recovery of an employee because he had been hired without providing a health certificate to his employer, and the employer did not request one, in violation of the then penal code forbidding persons to be employed in a food company without a health card. The court stated the statute was enacted to safeguard the public health and was not merely regulatory. In *Rogers,* supra, the court again denied recovery where an employee did not get a health certificate to work in a food company, citing the *Montgomery Ward* case, supra. There can be little doubt that Article 6687b requiring a chauffeur's license as a condition precedent to the transportation of passengers was a valid exercise of a state police power for the purpose of protecting the safety of the general public and that any contract in derogation of such article would be illegal. While the general rule is that a contract to do a thing which cannot be performed without a violation of the law is void, where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court. *Texas Employers' Ins. Ass'n v. Tabor,* 283 S.W. 779 (Tex.

Comm.Appeals 1926, judgmt. adopted); *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947).

The *Tabor* case, supra, points out that the court will decide whether a contract is in violation of a statute by looking at the specific facts of the case and deciding the intention of the parties in executing the contract. The court further stated: "It is not every mutual agreement that makes a lawful contract. The law will not enforce an agreement to do that which the same law says shall not be done. . . . A contract to do a thing which cannot be performed without a violation of the law is void, whether the parties knew the law or not, . . ." Thus, the trier of fact must determine whether or not a contract, although apparently legal on its face, involves the violation of a statute.

Since the evidence establishes the illegality of the contract, and this is a suit to enforce the contract, our courts will neither aid in the enforcement of such contract, nor grant any relief to a party who has executed it. *Morrison v. City of Fort Worth,* 138 Tex. 10, 155 S.W.2d 908 (1941). The cases of *Labbe v. Corbett,* 69 Tex. 503, 6 S.W. 808 (1888); *Pioneer Mutual Compensation Co. v. Diaz,* 142 Tex. 184, 177 S.W.2d 202 (1944); *Norman v. B. V. Christie,* 363 S.W.2d 175 (Tex.Civ.App.—Houston [1st Dist.] 1962, writ ref'd n. r. e.); and *Lewis v. Davis,* 146 Tex. 468, 199 S.W.2d 146 (1947), all cited by Peniche, are not in point.

On oral argument Peniche stated that his contract was not one for personal services and that he could have performed the contract by employing someone else to do the work contemplated by the terms of the agreement. The evidence establishes that the contract before this court was based upon the personal trust, acquaintance and confidence that existed between Fabre and Peniche, and hence was one for personal services. This being true, the contract could not be assigned without an agreement of the parties. Since *Menger v. Ward,* 87 Tex. 622, 30 S.W. 853 (1895), Texas courts have followed this principle: " 'Rights aris-

ing out of contract[s] cannot be transferred if they involve a relation of personal confidence, such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." *Heffington v. Hellums,* 212 S.W.2d 245 (Tex.Civ.App.—Austin 1948, writ ref'd n. r. e.); *Amsco Pipeline Co. v. Donico Production Co.,* 112 S.W.2d 483 (Tex.Civ.App.—San Antonio 1938, writ dism'd). A careful review of all of the evidence adduced upon the trial of this matter reveals that Peniche contracted to be a chauffeur and transport the pilots and stewardesses of Aeromexico to and from the airport to their hotel in violation of the law. It is well settled that an illegal contract cannot be ratified or saved by estoppel. Although Aeromexico allowed Peniche to drive for it and compensated him for his services, the contract cannot be redeemed or revived as a legal contract. Aeromexico also violated the law when it entered into the contract, thereby making it an illegal contract. 13 Tex.Jur.2d Contracts, Section 220 (1960); *Seafarer's Welfare Plan v. George E. Light Boat Storage, Inc.,* 402 S.W.2d 231 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.); *Continental Fire & Cas. Ins. Corp., v. American Mfg. Co.,* 221 S.W.2d 1006 (Tex.Civ.App.—Ft. Worth 1949, writ ref'd); *Moser Co. v. First Church of Christ, Scientist,* 525 S.W.2d 946 (Tex. Civ.App.—Waco 1975, no writ).

Peniche further contends that in addition to his damages for breach of the contract, he has a cause of action against Aeromexico for slandering him. Peniche does not allege anywhere in the petition that slanderous words used by Gutierrez were published to a third party. To support his claim for slander, proof of publication is necessary. *Bull v. Collins,* 54 S.W.2d 870 (Tex.Civ.App.—Eastland 1932, no writ); *Rivers v. Feazell,* 58 S.W.2d 133 (Tex.Civ. App.—Beaumont, no writ).

The pleadings and the evidence do not show that Peniche proved a cause of action for slander. In fact, there is no mention of slander except on appeal. The trial court heard all of the testimony and apparently found that it was insufficient as a matter of law to support a finding in Peniche's favor on any issue raised. Peniche's point of error is overruled.

The judgment of the trial court is affirmed.