Opinion issued February 18, 2010

                                                                        

 

 

 

 



 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00187-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



MERRY HOMES, INC., Appellant

 

V.

 

CHI HUNG LUU, Appellee

 

 



On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2006-27145

 

 



O P I N I O N

          In
this commercial lease dispute, we determine whether a landlord may enforce a
lease to operate a “nightclub or bar” and for “no other” purpose when the
tenant cannot legally obtain a liquor license for the leased premises and the
lease requires that any activity on the premises comply with applicable law.

After a bench trial, the trial court
entered a judgment declaring the commercial lease between Merry Homes, Inc. and
Chi Hung Luu void for illegality, since the lease only authorized the operation
of a nightclub or bar at the premises and Luu was unable to obtain a liquor
license due to the premises’ proximity to a public school.  The trial court awarded Luu $6000 for the
security deposit, $25,300 in attorney’s fees, and denied Merry Homes’ counterclaim
for unpaid rent.  In nine issues, Merry
Homes (1) challenges the legal and factual sufficiency of fifteen different
findings of fact and conclusions of law; (2) contends the trial court erred in
holding the lease void for illegality, using an admission made by a
co-defendant against Merry Homes, awarding attorney’s fees to Luu, and denying
Merry Homes’ recovery on its counterclaim; and (3) asserts that six findings of
fact should be disregarded as irrelevant to the issue of enforceability of the
lease.  We hold that the trial court
correctly determined that Luu could not legally perform under the lease, and
therefore affirm the judgment of the trial court.

Background

In December 2004, Chi Hung Luu, his friend
and business partner Luc Dao, and Raymond Yu, Merry Homes’ agent, began
negotiating to lease space in a new shopping center located on Bellaire Boulevard.  Luu informed Yu of his desire to open a
nightclub or bar at the location, and Yu responded that this particular
location had good potential for that kind of business.  Shortly after the initial meeting with Yu,
Luu contacted Kim Marketing, an agency that specialized in obtaining liquor
licenses, to discuss the requirements for such a license.  The representatives of Kim Marketing informed
Luu that he did not need to secure a lease before he applied for a liquor
license, though Yu, as the landlord’s representative, had to supply lease information
on the license application.  In December
2004, Luu submitted a proposal of lease terms to Merry Homes, including
proposed monthly rent ranging from $7000 to $7700 for a five year lease term, a
security deposit of $7000, and Luu’s right to terminate the lease with
forty-five days’ notice.

Over the next five months, Luu and
Dao met with Yu three or four additional times. 
On May 20, 2005, Yu presented a copy of the lease to Luu for his review.  This version of the lease differed from Luu’s
earlier written proposal:  the security
deposit and monthly rent were each $6000, and the lease included no provision
allowing Luu to terminate the lease with forty-five days’ notice.  According to Luu and Mary McGrane, a Merry
Homes representative, the parties agreed that Merry Homes would not collect rent
from Luu until after Luu obtained a permit to operate the bar and completed the
build-out.  On May 31, 2005, before the
parties executed the lease, Kim Marketing asked that Yu provide information
about Merry Homes for Luu’s liquor license application.  According to both Luu and Dao, Yu refused to
provide the necessary information for the application before Luu signed the
lease on June 2, 2005.

The lease provides that Luu may use
the premises only for the purpose of operating a nightclub or bar and for “no
other” purpose.  The lease also prohibits
Luu from using the premises for “any activity that violates any applicable law,
regulation, zoning ordinance, restrictive covenant, [or] governmental order” or
for “any activity that violates any applicable federal, state, or local law.”  An additional provision requires Luu to
“satisfy [himself] that the leased premises may be used as [Luu] intends by
independently investigating all matters related to the use of the leased
premises or Property.”

On June 10, 2005, Luu submitted his
liquor license application to the City of Houston.  Approximately one month later, the city faxed
a letter to Luu via Kim Marketing, informing him that the city denied his application
since the premises is located less than 300 feet from a public school and less
than 300 feet from a public hospital.  The
city mailed a follow-up letter on August 24, again informing Luu that it denied
his application, but also suggesting that he attempt to qualify for the “restaurant
exception,” which would allow Luu to operate a restaurant that serves alcohol
at the premises.  Luu testified that
immediately after he received the first denial from the City of Houston, he
contacted Yu and requested a meeting to determine how to proceed under the
lease.  At this meeting, Luu requested
the refund of $6000 of the $12,000 he had paid Merry Homes for the security
deposit and first month’s rent and asked to cancel the lease.  Yu responded that Luu had signed the lease
and was therefore committed to leasing the premises, but he should consider
other options for using the space, such as a pool hall or a restaurant.

After the meeting with Yu, Luu began
investigating the possibility of opening a restaurant instead of a bar.  Luu testified that a restaurant required a full
kitchen and thus a significantly more expensive build-out than a bar.  Luu ultimately determined that opening a
restaurant instead of a bar would not be financially feasible.

Merry Homes refused to refund Luu’s
deposit or cancel the lease.  Luu sought
a declaratory judgment that the lease was void since it could not be performed
legally, and also asserted claims of common law and statutory fraud, negligent
misrepresentation, and violations of the Deceptive Trade Practices Act.  Merry Homes counterclaimed for breach of
contract and sought to recover eight months’ unpaid rent.

After a bench trial, the trial court declared
the lease void and issued findings of fact and conclusions of law.  The trial court denied recovery on Luu’s four
other claims and on Merry Homes’ counterclaim for unpaid rent.  The trial court rested its decision that the
lease was void on two grounds:  (1)
Section 9(a) of the lease, which restricted the use of the premises to that of
a nightclub or bar, fatally conflicted with Sections 10(a)(3) and (5), which prohibited
any use of the premises that violates an applicable law or regulation; and (2)
Luu could not perform his contractual obligations legally, since he could not
obtain a liquor license for the premises due to its proximity to a public school.  The trial court awarded Luu $6000 in damages
and $23,500 in attorney’s fees.

Discussion

Standard of Review

In an appeal from a bench trial, the
trial court’s findings of fact have the same weight as a jury verdict.  HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190
S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  We review a trial court’s findings of fact
under the same legal and factual sufficiency of the evidence standards used
when determining if sufficient evidence exists to support an answer to a jury
question.  See Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); HTS Servs., 190 S.W.3d at 111.  When a trial court enters findings of fact
and conclusions of law, we “indulge every reasonable presumption in favor of
the findings and judgment of the trial court, and no presumption will be
indulged against the validity of the judgment.” 
Vickery v.
Comm’n for Lawyer Discipline, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th
Dist.] 1999, pet. denied).  In a
bench trial, the trial court judges the credibility of the witnesses,
determines the weight of testimony, and resolves conflicts and inconsistencies
in the testimony.  See Sw. Bell Media, Inc. v. Lyles, 825
S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  As long as the evidence falls “within the
zone of reasonable disagreement,” we will not substitute our judgment for that
of the fact-finder.  See City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).

In a legal sufficiency review, we
view the evidence in the light most favorable to the fact-finding, credit
favorable evidence if a reasonable fact-finder could do so, and disregard
contrary evidence unless a reasonable fact-finder could not.  See id.
at 827. 
“[F]indings of fact bind an appellate court only if the findings are
supported by evidence of probative force.” 
Thomas v. Casale, 924 S.W.2d
433, 437 (Tex. App.—Fort Worth 1996, writ denied); see also Jerry v. Ky. Cent. Ins. Co., 836 S.W.2d 812, 815 (Tex. App.—Houston [1st Dist.]
1992, writ denied). 
Anything more than a scintilla of evidence is legally sufficient to
support the fact-finding.  Formosa Plastics Corp. USA v.
Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).  In a factual sufficiency review, we view all
of the evidence in a neutral light and set aside the finding only if the
finding is so contrary to the overwhelming weight of the evidence such that the
finding is clearly wrong and unjust.  See Plas-Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We review de novo a trial court’s conclusions of law.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002).  If we determine that the
trial court made an erroneous conclusion of law, we will not reverse if the
trial court rendered the proper judgment. 
See id.  We uphold conclusions of law if the judgment
can be sustained on any legal theory supported by the evidence.  Adams
v. H & H Meat Prods., Inc., 41 S.W.3d 762, 769
(Tex. App.—Corpus Christi 2001, no pet.).

Sufficiency of the Evidence

          In
two issues, Merry Homes challenges thirteen findings for legal and factual
sufficiency.  Seven of these thirteen
findings are conclusions of law.  Merry
Homes challenges the following conclusions: 


·       
Sections 9(a) and
Sections 10(a)(3) and (5) are in fatal conflict; 

 

·       
Luu could not
perform the lease legally due to the location’s proximity to a school; 

 

·       
Due to the fatal
conflict and Luu’s inability to legally perform his obligations, the lease is
void; 

 

·       
The trial court
is not required to rule on any affirmative defenses raised by the parties; 

 

·       
The trial court
should render judgment only against Merry Homes and not Yu; and 

 

·       
At the conclusion
of the trial, the trial court erroneously stated that the lease conflict was
between section 9(a) and section 13.

 

We do not review conclusions of law
for legal sufficiency, but instead evaluate them independently to determine
their correctness.  See Rayford v. State, 16 S.W.3d 203, 210 (Tex. App.—Dallas 2000,
pet. denied); Jerry, 836 S.W.2d at
815.  A party “may not challenge a trial
court’s conclusions of law for factual insufficiency.”  BMC
Software, 83 S.W.3d at 794.  We review the other six challenged findings
of fact for legal and factual sufficiency. 
Specifically, Merry Homes challenges the following findings:  

·       
Luu reasonably
and in good faith believed he could open a bar and did not learn otherwise
until after he signed the lease; 

 

·       
Yu told Luu to
sign the lease before he would assist with the liquor license application; 

 

·       
All parties
believed Luu would open a nightclub or bar that served light refreshments or
snacks but not meals; 

 

·       
Luu reasonably
believed he could obtain a liquor license; 

 

·       
Yu’s attorney
admitted Luu never occupied the premises; and 

 

·       
Luu informed Yu
that the city denied his license application.

 

          Luu
testified that, in his initial meeting with Yu, he informed Yu that he was
looking into opening a nightclub or bar, and Yu responded that the location of
the premises had good potential for that particular type of business.  According to Luu, Yu opined that Luu should
not have a problem obtaining a liquor license because another bar stood near to
the premises.  Luu also stated that if Yu
had not told him that he would have no problem in obtaining a license, he would
not have signed the lease, indicating that Luu reasonably believed that he
could obtain a liquor license.  Luu
further testified that, upon receiving a letter from the City of Houston
denying the liquor license, approximately one month after signing the lease, he
immediately called Yu and requested a meeting to determine how to proceed.

          Yu
testified that he never met with Luu and Dao regarding the denial of the liquor
license, but Luu and Dao both testified that they met with Yu immediately after
receiving the City’s denial, and they informed him of the denial and discussed
alternative lease options.  Viewing the
evidence in the light most favorable to the fact-findings, we hold that legally
sufficient evidence exists to support the trial court’s findings that (1) Luu
reasonably believed he could open a bar at the leased premises and the city
would approve his license application, (2) Luu did not learn that he could not
open a bar at the premises until after he signed the lease, and (3) Luu met with
Yu and informed him that the city denied his liquor license.

          Luu,
Dao, and Yu himself each testified that Yu told Luu and Dao that he required a
signed lease before he would provide the necessary information regarding Merry
Homes for Luu’s liquor license application. 
Undisputed evidence therefore supports the trial court’s finding that Yu
told Luu and Dao to sign the lease before he would assist in providing
information for the license application. 
Luu additionally testified that before signing the lease, he and Dao met
with Yu and Mary McGrane and discussed how the bar would operate.  Luu informed Yu and McGrane that they planned
on selling liquor and serving some cold food, but not cooked meals.  McGrane testified that she understood that a
distinction exists between a restaurant and a bar, and Merry Homes always
believed that Luu would serve some food at the bar, though it was unaware of
the extent of food service.  According to
McGrane, if she had believed that Luu would build a full kitchen for a restaurant,
then she would not have prepared the lease to read that Luu could use the
premises to operate a nightclub or bar and for “no other” purpose.  We hold that legally sufficient evidence
exists to support the trial court’s finding that the parties thought that the
premises would be used for a nightclub or bar.

          In
the final finding of fact challenged by Merry Homes, the trial court found
that, in Luu’s Exhibit 15, Yu’s attorney admitted that Luu never occupied the
premises at any time material to the lawsuit. 
Exhibit 15 is a letter from Yu’s attorney to Luu, dated January 19,
2006, and states the following:  “You are
the tenant of the referenced property under a written lease dated June 2,
2005.  You still have not occupied the
premises.  Merry Homes, Inc., is concerned about the status of this lease.”  We hold that this letter is legally
sufficient evidence that Yu’s attorney admitted that Luu never occupied the
premises.  We hold that legally
sufficient evidence supports each of the challenged findings of fact.

          Merry
Homes also challenges the six findings of fact for factual insufficiency.  This contention, however, is unavailing.  Merry Homes does not point to any specific
evidence in the record that contradicts the trial court’s findings, and our review
of the record indicates that the findings are not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  See Cain, 709 S.W.2d at 176.  We therefore hold that factually sufficient
evidence supports the trial court’s findings of fact.

Legality of the Lease

          Merry
Homes contends that the trial court erred in determining that the lease was
void because Luu could not legally perform it. 
The Texas Supreme Court previously has held that a contract to fulfill
an obligation which cannot be performed without violating the law contravenes
public policy and is void.  See Lewis v. Davis, 199
S.W.2d 146, 148–49 (Tex. 1947); Gupta v.
E. Idaho Tumor Inst., Inc., 140 S.W.3d 747, 751 (Tex. App.—Houston [14th
Dist.] 2004, pet. denied).  The
purpose behind this principle is to benefit and protect the public, not to
punish or protect a party to the contract. 
See Villanueva v. Gonzalez,
123 S.W.3d 461, 464 (Tex. App.—San Antonio, 2003, no pet.).  If the illegality does not appear on the contract’s
face, a court will not find it void unless facts showing the illegality are
before the court.  See Lewis, 199 S.W.2d at 149.  If the parties could perform the contract in
a legal manner, the contract is not void merely because the parties may have
performed the contract in an illegal manner or committed illegal acts in
carrying out the contract.  See Denson v. Dallas County
Credit Union, 262 S.W.3d 846, 852 (Tex. App.—Dallas 2008, no pet.); Carras v. Birge, 211 S.W.2d 998, 1002
(Tex. Civ. App.—Dallas 1948, writ ref’d n.r.e.) (“[I]f any ordinance
existed absolutely prohibiting the performance by either or both of the parties
to the contract, and no method is therein provided whereby the contract could
be performed without violation of the ordinance, then, and only then, could the
contract be held void.”).  But, we must
not enforce an illegal contract, “particularly where the contract involves the
doing of an act prohibited by statutes intended for the protection of the
public health and welfare.”  Peniche v. Aeroméxico,
580 S.W.2d 152, 155 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ).

We decide whether a contract violates
a statute by “looking at the specific facts of the case and deciding the
intention of the parties in executing the contract.”  Id. at 156.  In Peniche, we refused to enforce a contract
for chauffer services because Peniche lacked a chauffer’s license in violation
of Article 6687b of the Revised Civil Statutes. 
See id.  We noted that “[t]here can be little doubt
that Article 6687b . . . was a
valid exercise of a state police power for the purpose of protecting the safety
of the general public and that any contract in derogation of such article would
be illegal.”  Id.; see also Denson, 262
S.W.3d at 854 (“[I]n situations where public policy concerns have led to a
governmentally supervised statutory licensing scheme, courts have consistently
held the unlawful and unlicensed participation in such regulated businesses
cannot form the basis of recovery.”); McCreary
v. Bay Area Bank & Trust, 68 S.W.3d 727, 733 (Tex. App.—Houston [14th
Dist.] 2001, pet. dism’d) (“Where a contract is made in violation of a statute,
it is illegal and void.”).

Here, the Texas Alcoholic Beverages
Code authorizes counties and cities to adopt regulations prohibiting the sale
of alcohol within 300 feet of a public school. 
See Tex. Alco. Bev. Code Ann.
§ 109.33(a) (Vernon 2007).  The City of Houston has adopted such a
regulation.  See Houston, Tex., Code of Ordinances ch. 3, art. I, § 3-2(a) (1968). 
The Texas Legislature and the City of Houston enacted this statute and
ordinance, respectively, to protect the health and safety of the general
public.  See Tex. Alco.
Bev. Code Ann. § 1.03
(Vernon 2007) (“This code is an exercise of the police power of the state for the
protection of the welfare, health, peace, temperance, and safety of the people
of the state.”).  Any
contract or lease that requires a violation of this statute and ordinance is
void.  See Peniche, 580 S.W.2d at 156.  Although the Houston Code of Ordinances
includes a “restaurant exception” to the general prohibition of selling alcohol
within 300 feet of a public school, Houston, Tex., Code of Ordinances ch. 3,
art. I, § 3-2(g) (1968), the trial court explicitly found that the lease
required Luu to operate a “nightclub/bar” on the premises, and not a restaurant,
and that the parties never intended to operate a restaurant.

Although the lease, on its face, does
not require violation of the law, the only permissible use of the premises
under the lease’s terms is impossible and illegal, given the location of the
premises relative to a school.  As Luu
cannot obtain a liquor license and therefore cannot perform under the lease
without violating the statute and ordinance, the trial court properly
determined that this lease is void for illegality.

Merry Homes relies on Houston Ice & Brewing Co. v. Keenan
for the proposition that Luu unconditionally bound himself to perform under the
lease, and thus the City of Houston’s refusal to grant a liquor license should
not excuse his performance, especially because the City’s denial is a
contingency that Luu should have anticipated. 
See 88 S.W. 197 (Tex. 1905).  The lease in Keenan limited the use of the premises to the operation of a saloon
in Ellis County.  Id. at 200.  At the time the parties executed the lease,
the Texas Legislature had enacted a “local option statute,” which allowed
individual counties to prohibit the sale of alcohol within the county.  Id.  Ellis County did not adopt such a prohibition
until after execution of the lease.  Id. 
The Texas Supreme Court adopted the reasoning of the Dallas Court of
Appeals in holding that the lease was legal:

[W]hen a party voluntarily undertakes and by contract
binds himself to do an act or thing, without qualification, and performance
thereof becomes impossible by some contingency which should have been
anticipated and provided against in the contract, the nonperformance will not
be excused.  In such case the party’s
failure to exempt himself from responsibility in the event of the happening of
the contingency will be attributable to his own folly and he will be held to
make good his contract.

 

Id.
at 198.  Relying on Keenan, Merry Homes maintains that the lease is not void for
illegality because the lease required Luu to “satisfy” himself that the premises
could be used as he intended.

We agree with Luu that Keenan, which involves a supervening
illegality after execution of the lease, is factually distinguishable.[1]  The Dallas Court of Appeals noted that the
permissible use in the Keenan lease
was “entirely legal” when the lease contract was executed.  Id.  Here, the City of Houston enacted the
ordinance prohibiting the sale of alcohol within 300 feet of a public school
prior to execution of Luu’s lease. 
Chapter 3 of the Houston Code of Ordinances includes no provisions or
mechanisms for obtaining a variance or exemption from the ordinance’s
prohibition.  See Houston, Tex., Code of Ordinances ch. 3, art. I (1968).  The City’s August
24, 2005, letter to Luu suggests that Luu may qualify for a license under the
“restaurant exception,” indicating that turning the leased space into a restaurant
is the only way to obtain a liquor license for this premises.  Unlike the use of the premises in Keenan, Luu could never perform the only
permissible use under his lease that the trial court found, operating a
nightclub or bar, without violating the law.

Merry Homes further observes that a
majority of jurisdictions hold that a lease remains valid if the tenant cannot
obtain the permit or license necessary to use the premises in the manner
required by the lease.  Merry Homes relies
on a reporter’s note to section 9.2 of the Restatement (Second) of Property,
which states that “[i]t is well supported that a lease for a purpose contrary
to the applicable zoning laws is not
a lease for an illegal purpose when the purpose may become permissible if a
license, permit, or variance is obtained.” 
Restatement (Second) of
Prop.:  Landlord & Tenant
§ 9.2 reporter’s n.3 (1977) (emphasis added).  Courts in other jurisdictions have noted that
the zoning scenario is unique since the governing authority “frequently” grants
variances from zoning regulations.  See Warshawsky v. Am. Auto. Prods. Co., 138 N.E.2d 816, 819 (Ill. App. Ct. 1956); see also Pa. State Shopping Plazas, Inc. v.
Olive, 120 S.E. 372, 375 (Va. 1961) (“There is authority that the obligor
in a contract is excused from its performance when to perform would violate
zoning regulations, but the rule is not applicable where, as in the present
case, the zoning laws permit a variance in the regulations and some discretion
may be exercised by the proper authorities in granting a permit for a proposed
use.”).  In the only Texas case to
address this issue, the Dallas Court of Appeals observed that a zoning ordinance
would not automatically establish the illegality of the contract “so long as
there existed a method, procedure, or course of action
making it possible for a permit to issue within the time as contemplated by the
contracting parties.”  Carras, 211 S.W.2d at
1002.  Unlike some zoning
regulations, the ordinance here does not provide a mechanism by which a party
can obtain a variance or exemption.

This case, therefore, is governed by
section 9.1(1) of the Restatement (Second) of Property:  “If the parties to the lease both intend that
the leased property is to be used for a purpose illegal under all
circumstances, the lease is unenforceable against the tenant.”  Restatement
(Second) of Prop.:  Landlord & Tenant
§ 9.1(1); see also id.
§ 12.4 (stating lease is unenforceable against landlord in same
situation).  Because the City of Houston
does not grant variances to the application of this ordinance, the intended use
of this property as a nightclub or bar “is illegal no matter by whom it is made.”  See id. § 9.1 cmt. a; see also id.
§ 9.2 reporter’s n.6 (“Where the zoning law allows no variance, it has
been held that a lease for a purpose prohibited by that law is voidable at the
tenant’s option upon ascertaining that the use is absolutely prohibited.”); id. cmt. d
(“When the use intended by the parties is illegal unless a permit, license or
variance is obtained, the tenant may be justified in concluding that it would
be impossible to obtain a necessary permit, license or variance.”).  Although Merry Homes is correct that
operating a nightclub or bar is not illegal in itself, operation of a nightclub
or bar at this particular premises is illegal
regardless of who operates it.  Because
the only authorized use of this particular premises is illegal under all circumstances,
this lease is unenforceable against either Luu or Merry Homes.

Merry Homes cites to Gaston v. Gordon, a 1911 case from the
Massachusetts Supreme Court, for the proposition that the trial court erred in
holding the lease void since Luu failed to obtain the liquor license needed to
legally operate his business.  94 N.E. 307 (Mass. 1911). 
The Gaston court noted,
however, that “[t]his business when licensed according to the provisions of the
statute is recognized by law as legal. 
It was possible in the nature of things lawfully to comply with all the
stipulations of the lease.”  Id. 
Here, it was impossible for Luu to satisfy the requirements of the
ordinance and simultaneously comply with the terms of the lease because the
lease agreement fixed the premises in a locale where no bar or nightclub could
operate.

Finally, Merry Homes contends that
the trial court’s decision to declare the lease void cannot be affirmed on the
basis of impossibility of performance. 
Merry Homes relies on section 10(c) of the lease, which provides that
Luu will satisfy himself that the premises can be used for the intended
purposes, and thus is bound to perform.[2]  See
Restatement (Second) of Contracts
§ 261 cmt. a (1981).  We first note that section 261 of the
Restatement only applies to supervening events that render performance
impracticable, not pre-existing conditions and events.  See id.
(“Cases of existing, as opposed to supervening, impracticability are governed
by § 266 rather than this Section.”). 
The trial court found that the ordinance prohibiting the sale of alcohol
on Luu’s premises which renders Luu’s performance illegal and impracticable
existed before the parties executed the lease, and therefore section 266 of the
Restatement applies.  Section 266(1) provides:

Where, at the time a contract is made, a party’s
performance under it is impracticable without his fault because of fact of
which he has no reason to know and the non-existence of which is a basic
assumption on which the contract is made, no duty to render that performance
arises, unless the language or circumstances indicate the contrary.

 

See id.
§ 266(1).  The last clause of
section 266 provides that a party may agree to perform despite the existing
impracticability.  See id. cmt. b.  Comment a to section 266 notes that “the
rules on agreements unenforceable on grounds of public policy stated in Chapter
8 will also apply.  To the extent that
the latter bar relief for reasons based on public policy, they are controlling.”  See id.
cmt. a.

We have repeatedly noted that
contracts to perform an act in violation of a statute are void and contrary to
public policy.  See McCreary, 68 S.W.3d at 733 (“Where a contract is made in
violation of a statute, it is illegal and void.”); Peniche, 580 S.W.2d at 155 (holding that when contract requires
performance of act violating statute that protects public health and welfare it
is our duty to “at once decline to give [the contract] any validity”); see also In re Kasschau, 11 S.W.3d 305,
312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (“A contract to do
a thing which cannot be performed without violation of the law violates public
policy and is void.”).  Although section
266 excuses performance as impracticable based upon a pre-existing condition
“of which [the party] has no reason to know,” we previously held that “[a]
contract to do a thing which cannot be performed without a violation of the law
is void, whether the parties knew the law
or not.”  Peniche, 580 S.W.2d at 156 (citing Tex. Employers’ Ins. Ass’n v. Tabor, 283 S.W. 779, 780 (Tex. Comm’n
App. 1926, judgm’t adopted)) (emphasis added); see also Centex Corp. v. Dalton, 840 S.W.2d 952, 955 (Tex. 1992) (“The
updated Restatement (Second) of Contracts § 261 omitted [the “no reason to
anticipate”] requirement, explaining that many factors may excuse a failure to
deal with contingencies, and that even if the event was reasonably foreseeable,
or even foreseen, the contracting
party may still be discharged.”) (emphasis added).  The Texas Supreme Court “has long recognized
Texas’ strong public policy in favor of preserving the freedom of
contract.”  Fairfield Ins. Co. v. Stephens Martin
Paving, LP, 246 S.W.3d 653, 664 (Tex. 2008).  Freedom of contract, however, is not
unlimited:  “As a rule, parties have the
right to contract as they see fit as long as their agreement does not violate
the law or public policy.”  Id. (quoting In re Prudential Ins. Co. of Am., 148
S.W.3d 124, 129 & n.11 (Tex. 2004)); see
also Sonny Arnold, Inc. v. Sentry Sav. Ass’n, 633 S.W.2d
811, 815 (Tex. 1982). 
Merry Homes cannot indirectly receive benefits—monthly rental payments—from
what the law says it cannot do directly. 
See Trammel Crow
Co. No. 60 v. Harkinson, 944 S.W.2d 631, 634 (Tex. 1997).  Following our court’s prior precedents, we
hold that the trial court correctly determined that this lease is illegal and
void as against public policy because performance of Luu’s lease obligations
would violate an ordinance directed toward protecting the public health and
welfare.

Luu’s Attorney’s Fees

          In
its seventh issue, Merry Homes contends that the trial court erred in awarding attorney’s
fees to Luu because the court erroneously determined that the lease was void;
therefore, the award of attorney’s fees was, as a matter of law, neither equitable
nor just.  In suits brought under the
Declaratory Judgment Act, attorney’s fees awards are within “the trial court’s
sound discretion, subject to the requirements that any fees awarded be
reasonable and necessary, which are matters of fact, and to the additional
requirements that fees be equitable and just, which are matters of law.”  Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).  Aside from stating in a heading that “[t]he
award of attorney’s fees was error because, as a matter of law, the amounts
awarded were not equitable and just,” Merry Homes cites to no authority, nor to
any portions of the record that indicate that the trial court’s award of
$23,500 to Luu for attorney’s fees is inequitable or unjust.  See
Tex. R. App. P. 38.1(i).  Luu presented evidence at trial that he
incurred $32,000 in attorney’s fees.  Merry
Homes’ attorney introduced evidence that Merry Homes incurred $6700 in
fees.  Merry Homes, neither at trial nor
on appeal, presented any evidence suggesting that this amount of attorney’s
fees was unreasonable, unnecessary, inequitable, or unjust.  Accordingly, we hold that the trial court
correctly awarded $23,500 in attorney’s fees to Luu.

Disregarding Particular Findings of Fact

          In
issue four, Merry Homes contends that the trial court erred in making certain
findings of fact because those findings are not relevant to the issue of the
lease’s enforceability and do not support the trial court’s judgment.  A trial court’s findings of fact are binding
unless challenged on appeal, and we may not disregard findings of fact unless
the findings are so contrary to the overwhelming weight of the evidence as to
be manifestly wrong.  El Puerto de Liverpool v. Servi Mundo
Llantero S.A. de C.V., 82 S.W.3d 622, 628 (Tex. App.—Corpus Christi 2002,
pet. dism’d w.o.j.); Perna v. Hogan,
162 S.W.3d 648, 656 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  As discussed above, we held that both legally
and factually sufficient evidence supports the trial court’s findings of fact.  Whether findings are irrelevant or superfluous
to the trial court’s judgment is not a valid basis for disregarding such
findings on appeal.  See also Speer v. Presbyterian Children’s Home, 847 S.W.2d 227, 233
& n.4 (Tex. 1993) (Gonzalez, J., concurring) (“Under our rules of procedure,
an appellate court cannot disregard findings of fact—the appellate court can
only deviate from such findings if there is no evidence to support the
findings.”).  Even disregarding the
challenged findings, sufficient findings of fact remain to support the trial
court’s determination that the lease required a nightclub or bar and nothing
else.  Merry Homes cannot show that any
error committed by the trial court in making irrelevant findings either probably
caused the rendition of an improper judgment or prevented Merry Homes from
properly presenting its case on appeal.  See Tex.
R. App. P. 44.1(a).

          Merry
Homes further contends that the trial court erred in using Yu’s admission that
the lease could not be performed legally against Merry Homes.  A matter admitted pursuant to a request for admission
is “conclusively established as to the party making the admission.”  Tex.
R. Civ. P. 198.3.  Even without Yu’s
admission, the facts support the trial court’s conclusion that Luu could not
operate a business in the leased space consistent with both the City of Houston
ordinance and the terms of the lease limiting the use of the premises
exclusively to a nightclub or bar.  Merry
Homes thus failed to establish that any use of this admission against Merry
Homes constitutes harmful error.  See Tex.
R. App. P. 44.1(a).

 

Conclusion

We hold that the trial court
correctly determined that the lease was void because Luu could not perform his
obligation under the lease to avoid violating a City of Houston ordinance.  We further hold that the trial court’s award
of $23,500 in attorney’s fees to Luu was not inequitable or unjust.  We therefore affirm the judgment of the trial
court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Massengale.











[1] Even if Keenan
is applicable to this case involving a pre-existing illegality, as opposed to a
supervening illegality, we note that the holding in Keenan relied heavily on the fact that Ellis County’s exercise of
its option to prohibit the sale of alcohol was highly foreseeable at the time
Keenan entered into the lease agreement and, as a result, Keenan should have
protected himself by insisting on a contingency clause relieving him of his
lease obligations if the county later adopted prohibition.  See Houston Ice & Brewing Co. v. Keenan, 88 S.W. 197, 198 (Tex.
1905).  The Texas Supreme Court
later observed that “[t]he foreseeability factor has, however, gradually
decreased in importance,” and a party may still be discharged from performance
even if the supervening event was reasonably foreseeable.  Centex Corp. v. Dalton, 840 S.W.2d 952, 955 (Tex. 1992).  Under the more recent authority in Centex, Luu’s failure to ensure that the
lease contained a contingency clause excusing his performance upon denial of a
liquor license, even if the denial of the license was reasonably foreseeable,
does not require enforcement of the lease.





[2] Merry Homes points out that section 9.2 of the
Restatement (Second) of Property, which allows a tenant to terminate a lease if
the intended use of the property later becomes illegal, begins by stating
“[e]xcept to the extent the parties to a lease validly agree otherwise,” and
contends that section 10(c) of the lease brings this case within the exception
to section 9.2.  See Restatement (Second) of
Prop.:  Landlord & Tenant
§ 9.2 (1977).  Comment c to section
9.2 describes examples of “valid agreements otherwise,” including agreements
that the lease will automatically terminate if the intended, but not sole
permissible, use under the lease becomes illegal, and agreements that shift
responsibility to the landlord to obtain a required license, permit or
variance.  See id. cmt. c.  Comment c does not list an agreement such as
section 10(c) of this lease, which would require Luu to continue his rental
obligation even though his only permissible use of the premises is illegal, as
a “valid agreement otherwise.”  See id.